575 A.2d 593

COMMONWEALTH of Pennsylvania

v.

Denise BLAIR, Appellant.

Superior Court of Pennsylvania.

Submitted Feb. 26, 1990.

Filed May 14, 1990.

Michael J. Rudinski, Williamsport, for appellant.

Kenneth A. Osokow, Asst. Dist. Atty., Williamsport, for Com., appellee.

Before ROWLEY, OLSZEWSKI and TAMILIA, JJ.

OLSZEWSKI, Judge:

This is an appeal from a judgment of sentence. After a jury trial, appellant, Denise Blair, was convicted of driving

under the influence of alcohol, resisting arrest, three counts of disorderly conduct, and accident involving death or personal injury (failure to stop at the scene of an accident). Appellant was also found guilty of four summary offenses of harassment. Appellant was sentenced to make restitution, pay numerous fines, and serve an aggregate of sentences at a state correctional institution of not less than six months to not more than two and one-half years. Appellant's post-trial motions and motion to modify sentence were denied. She calls upon us to determine the following issues: (1) whether there was sufficient evidence for a jury to find her guilty beyond a reasonable doubt of driving under the influence of alcohol; (2) whether the suppression court erred in not suppressing all evidence obtained after police officers entered her residence; (3) whether the court erred in allowing the Commonwealth to establish the basis for the police officer's entry into Ms. Blair's residence by hearsay evidence; (4) whether the court erred in not suppressing a video tape recorded while she was in custody; (5) whether a mistrial should have been granted because, during his testimony, a police officer referred to Ms. Blair's silence after her arrest; and (6) whether her sentence was too harsh.

At approximately 2038 hours on June 17, 1988, appellant drove a Bayerische Motoren Werke automobile (BMW) into the rear of another automobile. Occupants of both automobiles were injured and both vehicles were damaged. Witnesses observed Ms. Blair at the scene in her BMW and described her as looking dazed and not responding to their statements. Appellant drove away without waiting for the police to arrive. A witness obtained the BMW's plate number and informed the police.

The BMW was registered to a Steven Blair at 228 Southern Avenue in South Williamsport, Pennsylvania. Officer Kuhns and other officers arrived at that address and noticed the BMW at the rear of the property. It was damaged. Officer Kuhns was admitted to the residence by a neighbor. Almost immediately, he observed appellant. She was bleeding from the lip and chin, there was a strong to

moderate odor of alcohol emanating from her, and her eyes were glassy. Officer Kuhns asked her several times whether she needed medical assistance but she did not respond. He informed her of the implied consent law.

Officer Kuhns had no doubt that appellant was the driver of the BMW. Sergeant Jett arrived and Ms. Blair was handcuffed. She had difficulty standing and both officers had to escort her to a patrol car. On the way to the patrol car, appellant became violent. She kicked, fought, and resisted all efforts of the officers. She called Sergeant Jett a "nigger," used obscenities and made sexual comments to the officers. Upon being placed in the patrol car, she began kicking the windows. The police officers left after making sure that Ms. Blair's children were cared for.

Sergeant Jett drove appellant to the Williamsport Hospital, where she managed to open the car door, tumble out, and run part way across the parking lot before he was able to apprehend and restrain her.

Inside the hospital, appellant continued her diatribe of obscenities and racial remarks. She refused a blood alcohol test and spat on officers, hospital personnel and a police chaplain who were attempting to help her.

After leaving the hospital, the officers had to resort to force to place appellant in the patrol car. While fighting the officers, Ms. Blair kicked Officer Henry in the side and in the face. Appellant's ankles were handcuffed and she was placed in the cruiser.

Approximately one block away from the hospital, appellant's spitting on the officer and the chaplain in the front seat became so persistent that they had to stop the cruiser and handcuff her arms and legs to the cage so that she was facing toward the rear and could not spit on them.

Outside City Hall, appellant calmed down; however, once inside she resumed her litany of obscenities and sexual and racial comments. Once again, her legs and wrists were shackled and she was placed in a holding cell.

Ms. Blair's uncooperativeness made it impossible for Officer Kuhns to administer field sobriety tests. Ms. Blair was

informed that her conduct in the holding cell was being recorded on videotape. Ms. Blair's conduct was recorded for one hour. Approximately 45 minutes, into the recording she requested an attorney. The jury viewed the tape to the point prior to her request for an attorney.

## ISSUE I.

Appellant argues that there was insufficient evidence for a jury to find beyond a reasonable doubt that she was driving while under the influence of alcohol. We disagree.

In evaluating a claim of sufficiency of the evidence to sustain a conviction, the evidence must be viewed in the light most favorable to the verdict winner, Commonwealth, and drawing all reasonable inferences favorable to the Commonwealth, we must determine whether the jury reasonably could have found that all of the elements of the crime were established beyond a reasonable doubt. *Commonwealth v. Edwards*, 521 Pa. 134, 141, 555 A.2d 818, 823 (1989).

Driving under the influence is defined as follows:

**(a) Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:

(1) under the influence of alcohol to a degree which renders the person incapable of safe driving;

75 Pa.C.S.A. § 3731(a)(1).

We have reviewed the testimony presented at trial and are satisfied that sufficient evidence was presented from which a jury could have found beyond a reasonable doubt that appellant was driving under the influence of alcohol to a degree which rendered her incapable of safe driving.

## ISSUE II.

Appellant argues that all evidence obtained subsequent to the police officers' entry into her residence should have been suppressed. We disagree.

Prior to entering Ms. Blair's residence, the police knew that a woman had been driving an automobile which was involved in a hit and run accident. A registration check revealed that the automobile was owned by Steven Blair and was registered to an address at 228 Southern Avenue in South Williamsport. When police arrived at the Southern Avenue address, they saw the BMW automobile which had been involved in the accident. The headlights and grill were smashed, the radiator had been leaking, and the engine was still hot and steaming. An officer knocked on the door and inquired of a woman whether she was Mrs. Blair. The woman indicated she was not, so the officer inquired whether the driver of the automobile was there and whether he could talk with her. The woman stated that she was there, but "she isn't doing too good." (N.T., 6/24/88 at 25.)[1] The woman at the door then invited the police officer into the residence where he observed Ms. Blair.

The issue to be decided is whether the evidence[2] seized after the police entered 228 Southern Avenue should be suppressed because the individual authorizing the entry of the police did not have actual authority to consent to their entry. Stated another way, if a police officer is reasonably mistaken regarding the actual authority of a third party to consent to his entry into a building, should the evidence obtained as a result of that entry be suppressed. Our

---

**1.** Officer Kuhns categorically stated that when he was standing at the doorway of Blair's residence, he did not know that the neighbor was not the owner of the residence. He stated that he knew the person he was talking to was named Barbara and that the driver of the car was in the house. (Suppression transcript, 10/25/88 at 15.) It would appear that he also knew that the driver was probably injured. (S.T. at 12.) Elsewhere in the suppression transcript, Officer Kuhns states that he knew Barbara was a neighbor and that her daughter who was babysitting Ms. Blair's children had called Barbara to come over because of Ms. Blair's condition. (S.T. at 13–14.) After reading the transcript, we are convinced that Officer Kuhns learned of this information *after* he was admitted to the residence.

**2.** That evidence was appellant Denise Blair. She was bleeding from the chin, had a strong to moderate odor of alcohol emanating from her, and her eyes were bloodshot.

search of the authorities has yielded no Pennsylvania cases which are dispositive of this issue.

The suppression court upheld the search under two theories. We decline to follow the reasoning of the suppression court since there is only slight evidence [3] that the police entered Blair's residence to aid an individual in distress, as required under *Commonwealth v. Silo*, 509 Pa. 406, 502 A.2d 173 (1985).[4] Also, *U.S. v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), is not applicable since the neighbor who provided the third-party consent to the search did not have "common authority" over Blair's residence.

The Fourth Amendment of the Constitution of the United States embodies the concern of our society for the right of each individual to be let alone. *Schneckloth v. Bustamonte*, 412 U.S. 218, 236, 93 S.Ct. 204, 223, 36 L.Ed.2d 854, 872 (1973). The Fourth Amendment ensures that certain areas, particularly a home, are not subject to invasion at the caprice of investigating agencies. A citizen must be secure in knowing that his property and possessions are safe from search and seizure except in those situations where police have sufficient knowledge, probable cause, to believe that acts or things prohibited by our laws have or are occurring or where evidence of acts or things prohibited by our laws are located.

A search conducted without a warrant issued upon probable cause is *per se* unreasonable under the Fourth and Fourteenth Amendments, subject only to a few specifically established and well-delineated exceptions. *Id.* at 222, 93 S.Ct. at 209, 36 L.Ed.2d at 858. One exception is a search that is conducted pursuant to consent. *Id.* Both federal and state constitutions allow for a third-party consent search exception to the warrant requirement. *Commonwealth v. Kean*, 382 Pa.Super. 587, 602, 556 A.2d 374, 387 (1989). In the case before the bar, the neighbor (the third

**3.** S.T. at 14.

**4.** After reviewing the facts in *Silo* and comparing them to the instant facts, we do not believe that the exigent circumstances which permitted a warrantless entry in *Silo* are present in the instant case.

party) did not have actual authority to consent to the police officers entering Blair's residence.

Third-party consent cases fall into four broad categories. Previous to this decision, cases in our Commonwealth concerned situations where: (1) the consenting party had "superior authority" to the party objecting to the search, *see, Commonwealth v. Latshaw*, 481 Pa. 298, 392 A.2d 1301, *cert. denied*, 441 U.S. 931, 99 S.Ct. 2050, 60 L.Ed.2d 6596 (1978) (barn's owner had not surrendered any indicia of her absolute control over barn where defendant's marijuana was found pursuant to warrantless search with consent of barn's owner);[5] (2) the consenting party had equal or common authority to the party objecting to the search, *see, Commonwealth v. Arnold*, 331 Pa.Super. 345, 480 A.2d 1066 (1984), *Commonwealth v. Lowery*, 305 Pa.Super. 66, 451 A.2d 245 (1982), *Commonwealth v. Devlin*, 302 Pa.Super. 196, 448 A.2d 594 (1982);[6] (3) the consenting party had inferior authority to the party objecting to the search, *see, Commonwealth v. Garcia*, 478 Pa. 406, 387 A.2d 46 (1978), *Commonwealth v. Netting*, 315 Pa.Super. 236, 461 A.2d 1259 (1983) (third party who has neither interest nor control in a premises may not give the police valid consent to conduct a warrantless search of the premises);[7] and (4) the last area of third-party consent cases concerns those situations where a police officer is reasonably mistaken as to the actual authority of the party consenting to his entry; stated another way, the police officer reasonably mistakes apparent authority for actual authority to consent to his entry.[8]

**5.** *See also, United States v. Bradley*, 869 F.2d 417 (8th Cir.1989) (third party had equal, if not superior, privacy interest in property searched).

**6.** *See also, People v. La Peluso*, 239 Cal.App.2d 715, 49 Cal.Rptr. 85 (1966); *In re Anthony F.*, 293 Md. 146, 442 A.2d 975 (1982). By illustration, equal authority fact pictures might concern one spouse giving consent to search their common residence, or situations involving roommates or occupants of a hotel room.

**7.** Clearly, Ms. Blair's neighbor had inferior authority to Ms. Blair to consent to the police officer's entry into Blair's residence.

**8.** In *Matlock*, the Supreme Court left open the question of whether a warrantless search may be upheld upon a showing that the police officers reasonably believed that the consenting party had actual

The Fourth Amendment protects only "against unreasonable searches and seizures." W. LaFave, *Search and Seizure* § 8.3(g), at 264 (1987). The exclusionary rule operates to deter the police from unreasonable search and seizures. *Nix v. State*, 621 P.2d 1347, 1349 (Alaska 1981). There can be no deterrent effect where the police believe they are acting reasonably and lawfully and it is only with hindsight that actual authority to consent to a search is missing. *Id.* at 1349–1350.

The Commonwealth adopts the standard enunciated in *Nix:*

> We now align ourselves with those authorities, representing the majority view, which hold that apparent authority alone is required.[9] We adopt this view because it is more consistent with the fourth amendment proscription of unreasonable searches and seizures than a rule requiring actual authority regardless of reasonable appearances.
>
> [9] *United States v. Peterson,* 524 F.2d 167 (4th Cir.1975), *cert. denied,* 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976); *United States v. Turbyfill,* 525 F.2d 57 (8th Cir.1975); *United States v. Grisby,* 367 F.Supp. 900 (E.D.Ky.1973); *State v. Miller,* 159 N.J.Super. 552, 388 A.2d 993 (1978); *People v. Gorg,* 45 Cal.2d 776, 291 P.2d 469 (1955).

*Nix, supra,* 621 P.2d at 1349.[9]

In adopting the majority position, we are not allowing *carte blanche* consent entries into residences with the police officer being able to ratify his entry at a later date suppression hearing by merely stating that he was mistaken as to the actual authority of the consenting party. We hold that the police officer's reasonable mistake must be judged from an objective standard based on the totality of the circumstances. Although the police officer's state of mind is one factor to be considered in determining the reasonability of the mistake, it is not the only factor. Moreover, the police officer's mistake must be reasonable. In ambiguous situations, those situations which would cause a reasonable

authority to permit the search. *Matlock, supra,* 415 U.S. at 177 n. 14, 94 S.Ct. at 996 n. 14, 39 L.Ed.2d at 253 n. 14.

**9.** *See also, People v. Adams,* 53 N.Y.2d 1, 439 N.Y.S.2d 877, 422 N.E.2d 537 (1981); *State v. Girdler,* 138 Ariz. 482, 675 P.2d 1301 (1983).

person to question the consenting party's actual authority or if the consenting party's assertions of authority appear unreasonable, a police officer should make further inquiries to determine the status of the consenting party.[10] Reliance on a third party's bald assertion in such situations could subject any search to the remedy of the exclusionary rule. *Adams, supra,* 439 N.Y.S.2d at 881, 422 N.E.2d at 541.

Our holdings in this case buttress a person's reasonable expectation of privacy as to a given area or in things by continuing to deter unreasonable police searches and seizures. Although we could require police officers to secure both actual and apparent authority before entering a residence, we do not believe the police should have to institute an action for declaratory judgment to determine the authority of the third party or individual giving consent to enter or search.

Effective law enforcement must be balanced against an individual's right to be let alone. By holding that a reasonable mistake regarding actual authority to consent does not invoke the exclusionary rule, the police are deterred from undertaking unreasonable searches and seizures. Effective law enforcement is also promoted since fortuitous findings of evidence are not excluded. In fact, where an officer reasonably believes that his search is a legitimate third-party consent search, excluding evidence seized would not further the goal of deterring illegal searches since the officer believed his search was legal. In other words, the police officer could not have been deterred since he believed that he was conducting a permissible consent search. Investigating authorities can only be deterred from making searches and seizures they know are outside the framework of a proper search and seizure.

To remove some of the ambiguity inherent in third-party consent searches, we hold that it is reasonable for police

10. For example, *see* the fact picture in *People v. Misquez,* 152 Cal. App.2d 471, 313 P.2d 206 (1957); or *United States v. Harris,* 534 F.2d 95 (7th Cir.1976) (officers could not have reasonably believed that third party had authority to consent to their entry into defendant's apartment).

218

officers to assume that a person who answers the door at a residence has authority to consent to their *entry* into the residence. *Nix, supra,* 691 P.2d at 1350; *see also,* Lafave § 8.5(e) at 311.

We must now apply the facts of this case to the law. The police officer knew that the woman who had answered the door was not Mrs. Blair. Furthermore, he did not know the relationship of Steven Blair to this residence other than the fact that the BMW was registered at that address. The officer then inquired whether the individual who had been driving the wrecked automobile was in the house. The woman who had answered the door indicated yes. The officer then asked· to speak to the driver. There is no evidence that he asked to enter or search the residence. At this point in time, it would be reasonable for the officer to assume he was talking with someone who lived in the residence. The woman who had answered the door then took it upon herself to voluntarily usher him into the residence where the officer almost immediately saw Ms. Blair (the evidence) in plain view. We find that under these facts, the police officer was reasonably mistaken when he assumed that the woman who answered the door had actual authority to admit him. The suppression court did not err in denying appellant's motion to suppress the evidence seized after the police officer entered her residence.

Regarding issues III, IV, and V, we adopt the reasoning of the trial court contained in issues VII, VIII, and IX of its 1925(b) statement, respectively.[11]

11.                                    VII

WHETHER THE EVIDENCE USED AT TRIAL TO ESTABLISH THE COMMONWEALTH'S BASIS FOR ENTRY INTO THE DEFENDANT'S HOME WAS INADMISSIBLE HEARSAY?

Defendant objects to the admission of the testimony of Officer Kuhns in which he recited the statements made to him by Barbara Snauffer. Mrs. Snauffer was present at the Blair residence when Officer Kuhns arrived. When Officer Kuhns knocked on the door, Mrs. Snauffer was the individual who answered it. Officer Kuhns testified that the following conversation ensued between Mrs. Snauffer and himself;

"I asked if she was Denise Blair, she said no. I asked if in fact, that was the residence of Denise Blair, she said yes, it is. I asked her if Denise was here, the driver of the car, I should say, and she said yea. I said, well can I talk to her, and she said, well, she had been called over by her daughter who was babysitting." (N.T. p. 48)

Defendant argues that the above statements are hearsay. Hearsay is "an out-of-court statement offered to prove the truth of the matter asserted." *Commonwealth v. Cassidy*, 315 Pa.Super. 429, 462 A.2d 270 (1983). In order for testimony to be considered hearsay, all three elements of the definition must be present. It must be: (1) A statement; (2) Made out-of-Court; (3) Offered for the truth of the matter asserted. There is no question that the testimony of Officer Kuhns concerns statements made by Barbara Snauffer who was out-of-court and did not testify. However, the statements were not offered for the truth of the matter asserted. Instead the statements were offered to explain the motive or reason for the conduct of the person hearing the statement. "It is well settled that an out-of-court statement offered to explain a course of conduct is not hearsay." *Commonwealth v. DeHart*, 512 Pa. 235, 236, 516 A.2d 656, 666 (1986). In the present case, Officer Kuhns testimony was not offered to prove the truth of the statements made by Barbara Snauffer. The statements were offered to show the reason for the officer's entry into the Defendant's home and, therefore, are not hearsay.

VIII

WHETHER, DUE TO THE DEFENDANT NOT BEING GIVEN HER MIRANDA RIGHTS, THE COURT ERRED IN NOT SUPPRESSING THE ENTIRE VIDEOTAPE RECORDING OF HER CONDUCT WHILE IN CUSTODY?

The night of the accident, police officers placed Mrs. Blair in a holding cell. The officer set up a video recorder in the cellblock, informed Blair that the machine was on and that her actions would be recorded. The tape ran for one hour. Approximately 45 minutes into the recording, Blair asked for an attorney. The portion of the tape, up to the point where Blair made her request, was shown to the jury. Blair argues that her Motion to Suppress the entire video should have been granted for the reason that she was not advised of her Miranda rights. First of all, Defendant's Motion to Suppress the entire video tape was not included in her Omnibus Pre–Trial Motion and was, therefore, not timely filed. However, the motion will be considered on its merits.

For purposes of the requirement that Miranda warnings be given prior to in custody interrogation, the interrogation must reflect a measure of compulsion above and beyond that inherent in custody itself. Interrogation is defined as "express questioning and words or actions that the police should know are reasonably likely to [elicit] an incriminating response from the suspect." *Commonwealth v. [Bracey]*, 501 Pa. 356, 461 A.2d 775 [778 n. 6] (1983) [internal citation omitted]. The Defendant argues that the present situation is analogous to the facts in *Commonwealth v. Thompson*, 377 Pa. 598, 547 A.2d 1223 (1988). In *Thompson*, the Defendant was videotaped while undergoing a sobriety test. During the course of the test, the officers made various comments and gave instructions to the Defendant. The tape revealed that the Defendant was obscene, uncooperative and that

she repeatedly commented on the absence of legal representation. The Court held that while the defendant's statements were not as a result of direct interrogation, the Defendant was compelled by the circumstances to utter them.

The *Thompson* case is consistent with the [*Bracey*] decision. In *Thompson*, the situation went beyond mere custody. The officers made statements and gave instructions which indirectly compelled or, at least, were reasonably likely to [elicit] a response. In this case, Blair had been arrested and placed in a cellblock and was, therefore, in the custody of the police. However, the situation did not go beyond custody. The Defendant was not interrogated directly or indirectly. The police officers made no comments, and asked no questions and gave no instructions. To the contrary, with the exception of three times when officers came in briefly to inquire as to whether the Defendant was all right, none of the officers were present during videotaping. Therefore, Blair was not subjected to interrogation as that term is defined in [*Bracey*] and *Thompson*, and the portion of the videotape, up to the point where Blair requested counsel, is admissible.

## IX

WHETHER THE COURT ERRED IN DENYING DEFENDANT'S MOTION FOR A MISTRIAL BASED ON THE COMMONWEALTH'S USE OF TESTIMONY REFERRING TO THE DEFENDANT'S SILENCE AFTER HER ARREST, NOT WITHSTANDING THE FACT THAT THE COURT GAVE A CAUTIONARY INSTRUCTION?

During the course of the Commonwealth's direct examination of Officer Kuhns, the following ensued:

BY MR. HOLMES TO OFFICER KUHNS:

Q  At that point what did you do?

A  After observing her appearance and description that was given to me, I had no question at that time that she was the driver of the car and she appeared intoxicated and I placed her under arrest at that time, and advised her that I did want her to submit to the blood test and refusal to do so she would lose her licence for a year if found guilty or innocent of the charge. Again, she said absolutely nothing, no reply.

There is no question that reference to Blair's silence after arrest violated her constitutional right against self-incrimination and may have prejudiced her in the eyes of the jury. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, not every reference to a Defendant's silence results in a mistrial. In order to determine whether an instruction by the judge can cure any prejudice done to the Defendant, the following test is applied: "1) [t]he nature of the reference to the Defendant's silence; 2) [h]ow it was [elicited]; 3) [w]hether the district attorney exploited it; and 4) [t]he promptness and adequacy of the cautionary instruction." *Commonwealth v. Melvin,* 378 Pa.Super. 59, 61, 548 A.2d 275, 278. After applying the above test, the Court concluded that any prejudice done to the Defendant due to the reference of her silence could be cured by an appropriate cautionary instruction.

First, as stated, there was clearly a reference to the Defendant's silence that violated her constitutional rights. Second, the reference to Blair's silence was not deliberately [elicited]. The statement was in

## ISSUE VI.

Appellant argues that the sentence of the court was too harsh.

To reach the merits of a discretionary sentencing issue, we conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R. App.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 1410, *Commonwealth v. Boone*, 467 Pa. 168, 354 A.2d 898 (1975), *Commonwealth v. Krum*, 367 Pa.Super. 511, 533 A.2d 134 (1987) (*en banc*), *Commonwealth v. Duffy*, 341 Pa.Super. 217, 491 A.2d 230 (1985); (3) whether appellant's brief has a fatal defect, *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987), Pa.R.A.P. 2119(f), *Commonwealth v. Williams*, 386 Pa.Super. 322, 562 A.2d 1385 (1989), *Commonwealth v. Ziegler*, 379 Pa.Super. 515, 550 A.2d 567 (1988), *Krum, supra;* and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b). We are inclined to find the presence of a substantial question where appellant advances a colorable argument that the trial judge's actions were either inconsistent with the specific provisions of the Sentencing Code, or contrary to the norms which underlie the sentencing process. *Commonwealth v. Losch,*

response to a broad question from the Commonwealth. Third, only a single reference to the defendant's silence was made. Followup questions were directed to matters completely unrelated to the Defendant's silence. Therefore, the Commonwealth did not exploit the testimony [elicited] from Officer Kuhns. Fourth, the Court gave a prompt and adequate cautionary instruction to the jury. The Court charged the jury with the same cautionary instruction this Court used in *Melvin supra*. In *Melvin*, the Superior Court stated "it is evident that the cautionary instruction of the learned trial judge was clear and direct. Our review of the record persuades us to conclude that the cautionary instruction effectively minimized the prejudice to Melvin as to render Officer Bachman's testimony harmless." *Melvin* 548 A.2d at 278. Since the cautionary instruction used in this case is the same as that used in *Melvin,* and was given immediately following the officers reference to Blair's silence, there is no evidence that Blair suffered prejudice sufficient to warrant a new trial.
Trial court opinion at 12–17.

369 Pa.Super. 192, 535 A.2d 115 (1987). *See also, Commonwealth v. Felix,* 372 Pa.Super. 145, 539 A.2d 371 (1988).

■ The issue concerning the excessiveness of sentence was properly preserved and appellant filed a timely notice of appeal; however, there is a defect in appellant's brief. In *Tuladziecki, supra,* our Supreme Court stated that pursuant to Pa.R.A.P. 2119(f), an appellant who challenges the discretionary aspect of a sentence in a criminal matter must set forth in his/her brief, immediately preceding the argument on the merits, a concise statement of the reasons relied upon for the allowance of appeal with respect to the discretionary aspects of the sentence. *Tuladziecki, supra,* 522 A.2d at 19–20. *See also,* 42 Pa.C.S.A. § 9781(b). This statement allows us to determine whether we will exercise our discretion to reach the merits of the issue. Appellant's brief does not set forth in a separate section a concise statement of the reasons relied upon for allowance of appeal. This omission ordinarily would be fatal, but the Commonwealth has failed to object to this omission because it did not file a brief; therefore, appellant's failure to comply with this procedural requirement is waived. *Krum, supra,* 533 A.2d at 138.

■ We now reach the fourth part of our analysis: whether there is a substantial question that appellant's sentence is not appropriate under the Sentencing Code. We must determine whether any of the sentencing judge's actions were inconsistent with a specific provision of the Sentencing Code.

We have reviewed the transcript of sentence and the reasons stated for the judgment of sentence, and do not find a colorable argument that the sentencing judge's actions were either inconsistent with specific provisions of the Sentencing Code or contrary to the norms which underlie the sentencing process. We, therefore, decline to exercise our discretion to hear Ms. Blair's appeal of her sentence.

Judgment of sentence affirmed.