J-A34027-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| SELBY SHADE HARTER, | : | |
| | : | |
| Appellant | : | No. 2067 MDA 2013 |

Appeal from the Judgment of Sentence Entered October 22, 2013,
In the Court of Common Pleas of Cumberland County,
Criminal Division, at No. CP-21-CR-0002350-2012.

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, J., and STABILE, J.

MEMORANDUM BY SHOGAN, J.:                **FILED FEBRUARY 10, 2015**

Appellant, Selby Shade Harter, appeals from the judgment of sentence entered following his convictions of possession of marijuana with intent to deliver and possession of drug paraphernalia.  We affirm.

We summarize the history of this case as follows.  At 1:00 a.m. on July 3, 2012, a police officer entered the gravel parking lot of Susquehanna Sports Center, which serves as a parking area for multiple businesses, all of which were closed at the hour.  Upon entering the area, the officer observed two young males in the parking lot.  When they saw the patrol car, the males turned and ran away.  The officer exited his vehicle and observed a third young male.  Due to an 11:00 p.m. curfew in effect, the officer detained the third male, who was seventeen years old.  As the officer was

placing the third male into his patrol car, he noticed Appellant, being the fourth male in the area, walking across the parking lot at the "edge of the darkness." The officer asked Appellant what he was doing, and Appellant replied, "nothing," and that he "was just walking home." The officer noticed a large sum of money protruding out of Appellant's right front pocket and a bulge in that area of his pants.[1] The officer also observed that Appellant had been carrying a nylon drawstring backpack, which he took off, placed on the ground, and abandoned. The officer heard a "jingling" sound when Appellant placed the backpack on the ground.

After conducting a pat-down search of Appellant, the officer asked Appellant what was in the backpack. Appellant responded that the officer had "no right to go inside it." With the aid of his flashlight, the officer then looked inside of the open top of the backpack and observed a mason jar containing a green leafy substance. The officer then handcuffed Appellant. Other officers who arrived at the scene discovered a Dodge Intrepid parked in the parking lot. The vehicle was registered to Appellant's mother. There was cash on the roof of the car and mason jars visible inside of the vehicle. Police then obtained search warrants for the car and the backpack. In the backpack were two empty mason jars, a third mason jar containing four baggies of marijuana weighing 32.57 grams, and a digital scale. In the

---

[1] Appellant had over $1,000.00 in United States currency on his person.

vehicle were two empty mason jars, zipper-seal storage baggies, a weight used to calibrate scales, and the box from the scale that was discovered in the backpack. Appellant was then taken into custody.

In a criminal information filed on October 31, 2012, Appellant was charged with possession of marijuana with intent to deliver and possession of drug paraphernalia. On December 7, 2012, Appellant filed a pretrial motion seeking to suppress all evidence. On January 24, 2013, the trial court held a hearing on the motion to suppress. The trial court denied Appellant's motion on April 4, 2013. On August 8, 2013, after a nonjury trial, Appellant was convicted of the crimes stated above. On October 22, 2013, the trial court sentenced Appellant to serve a term of probation of twenty-four months for the conviction of possession of marijuana with intent to deliver. For Appellant's conviction of possession of drug paraphernalia, the trial court sentenced Appellant to pay the costs of prosecution. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant now raises the following issue for our review:

A. Whether the Commonwealth presented sufficient evidence to substantiate a finding of guilt beyond a reasonable doubt on the charges, did the police have sufficient reasonable articulable suspicion to justify [Appellant's] detention, and conduct a Terry search for weapons, did the officer possess valid probable cause to arrest the defendant and search his property?

Appellant's Brief at 10 (full capitalization omitted).

Appellant fails to present any substantive argument relating to the sufficiency of the evidence. Rather, Appellant argues that the trial court erred in failing to grant his motion to suppress the evidence. Appellant's Brief at 12-15. Essentially, Appellant claims that the police officer lacked reasonable suspicion to subject Appellant to an investigative detention, and consequently, all evidence should have been suppressed.

The standard of review an appellate court applies when considering an order denying a suppression motion is well established. An appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. *Commonwealth v. Russo*, 934 A.2d 1199, 1203 (Pa. 2007) (citing *Commonwealth v. Boczkowski*, 846 A.2d 75 (Pa. 2004)). Where the record supports the factual findings of the trial court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. *Id*. However, it is also well settled that the appellate court is not bound by the suppression court's conclusions of law. *Id*. (citing *Commonwealth v. Duncan*, 817 A.2d 455 (Pa. 2003)).

> With respect to factual findings, we are mindful that it is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented. However, where the factual determinations made by the suppression court are not supported by the evidence, we may reject those findings.

Only factual findings which are supported by the record are binding upon this court.

***Commonwealth v. Benton***, 655 A.2d 1030, 1032 (Pa. Super. 1995) (citations omitted). In addition, questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. ***Commonwealth v. Freidl***, 834 A.2d 638, 641 (Pa. Super. 2003).

Further, we are aware that Pennsylvania Rule of Criminal Procedure 581, which addresses the suppression of evidence, provides in relevant part, as follows:

> (H) The Commonwealth shall have the burden . . . of establishing that the challenged evidence was not obtained in violation of the defendant's rights.

Pa.R.Crim.P. 581(H).

Both the United States and Pennsylvania Constitutions prohibit "unreasonable searches and seizures." U.S. Const. Amendment IV; Pennsylvania Const. Art. 1, § 8.

> The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures, thereby ensuring the "right of each individual to be let alone." ***Schneckloth v. Bustamonte***, 412 U.S. 218, 236, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973); ***Commonwealth v. Blair***, 394 Pa. Super. 207, 575 A.2d 593, 596 (Pa. Super. 1990).

***Commonwealth v. By***, 812 A.2d 1250, 1254 (Pa. Super. 2002).

To secure the right of citizens to be free from intrusions by police, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive. *Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa. Super. 2000).

It is undisputed that:

> [s]tate case law recognizes three categories of interaction between police officers and citizens, which include: (1) a mere encounter, or request for information, which need not be supported by any level of suspicion, but which carries no official compulsion to stop or to respond; (2) an investigative detention, which must be supported by reasonable suspicion as it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest; and (3) arrest or custodial detention, which must be supported by probable cause.

*Commonwealth v. Acosta*, 815 A.2d 1078, 1082 (Pa. Super. 2003) (*en banc*). Thus, as the first level of interaction between police and citizens, a mere encounter is itself a "request for information," which needs no level of suspicion. *Id*.

As we explained in *Commonwealth v. Jones*, 874 A.2d 108 (Pa. Super. 2005):

> A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.

*Id*. at 116 (quoting *Commonwealth v. DeHart*, 745 A.2d 633, 636 (Pa. Super. 2000)).

-6-

If the police action becomes too intrusive, a mere encounter may escalate into an investigatory stop or a seizure. *Commonwealth v. Boswell*, 721 A.2d 336, 340 (Pa. 1998). To effectuate an investigative detention, the officers are required to have reasonable suspicion that unlawful activity was in progress. In order to demonstrate reasonable suspicion, the police must be able to point to specific facts and reasonable inferences drawn from those facts in light of the officer's experience. *Commonwealth v. Cook*, 735 A.2d 673, 677 (Pa. 1999).

"Because the level of intrusion into a person's liberty may change during the course of the encounter, we must carefully scrutinize the record for any evidence of such changes." *Commonwealth v. Blair*, 860 A.2d 567, 572 (Pa. Super. 2004) (citing *Commonwealth v. Strickler*, 757 A.2d 884 (Pa. 2000)). In determining whether a mere encounter has risen to the level of an investigative detention, our inquiry focuses on whether the individual in question has been seized.

> To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in the view of all surrounding circumstances, a reasonable person would believe that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement has in some way been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Strickler*, 757 A.2d at 889-890 (citations omitted).

Our Supreme Court has explained that the pursuit of an individual by police officers amounts to a seizure, and thus, the officer must demonstrate either probable cause to make the seizure or reasonable suspicion to stop and frisk. ***In the Interest of D.M.***, 781 A.2d 1161, 1164 (Pa. 2001) (citing ***Commonwealth v. Matos***, 672 A.2d 769 (Pa. 1996)). In addition, our Supreme Court has reiterated that unprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify a stop by police. ***Id***.

Because our review of the record reflects that the police officer in this case did possess the requisite reasonable suspicion when he approached and stopped Appellant, we agree with the suppression court's determination. Officer Timothy Rine of the West Shore Regional Police Department in Lemoyne, Pennsylvania, and member of the Cumberland County Drug Task Force, testified that on July 3, 2012, he was patrolling in full uniform in a marked police vehicle. N.T., 1/24/13, at 4. Officer Rine stated that the location he was patrolling was a high crime area based upon a high number of residential and business burglaries and car break-ins. ***Id***. at 5-6. Officer Rine explained that at approximately 1:00 a.m., he entered a business parking lot and witnessed two young males running away as soon as they saw the officer approach. ***Id***. at 8. Officer Rine stated that he then stopped his vehicle, exited, and encountered a third young male, who was seventeen years old, in the parking lot. ***Id***. at 9. The officer explained that the area

had a curfew of 11:00 p.m. *Id*. at 11. As he placed the underage male into the patrol vehicle, the officer observed Appellant, who was the fourth young male in the area, walking through the parking lot carrying a drawstring backpack. *Id*. at 11-12.

In addition, Officer Rine explained that as he approached Appellant, he observed Appellant lay the backpack onto the ground and walk away. *Id*. at 12. The officer indicated that the contents of the bag made a "jingling" sound. *Id*. at 13. With regard to what transpired next, Officer Rine offered the following testimony:

> I asked him what's in the bag. And at first, he said something to the effect of it's not mine. I don't know. And I started walking over to it; and then [Appellant] said, well, you can't look in that.

*Id*. In addition, Officer Rine explained that without manipulating the bag, he was able to see into the opening of the backpack with his flashlight and observed several mason jars, one of which contained a green leafy substance. *Id*. at 13-14. Furthermore, the officer explained that he had witnessed a large bulge of money protruding from Appellant's pants pocket. *Id*. at 15. Officer Rine stated that he presumed that he had come across a drug deal. *Id*.

The totality of these facts, in light of the knowledge of the officer at the time, was sufficient to establish reasonable suspicion of criminal activity necessary to stop Appellant. Thus, because the police officer articulated facts at the suppression hearing that would give rise to a reasonable

suspicion of criminal activity afoot, we conclude that the stop of Appellant was lawful, and that the suppression court properly held the evidence should not be suppressed. Therefore, we conclude that Appellant's contrary claim lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/10/2015