J-S58011-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| MANDY LEANE COOK, | |
| Appellee | No. 525 MDA 2015 |

Appeal from the Order Entered March 9, 2015
in the Court of Common Pleas of Centre County
Criminal Division at No.: CP-14-CR-0001490-2014

BEFORE: GANTMAN, P.J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:             **FILED NOVEMBER 24, 2015**

The Commonwealth appeals from the order of March 9, 2015, which granted the motion of Appellee, Mandy Leane Cook, to suppress photographs taken of her home.[1]  After review, we affirm.

We take the underlying facts and procedural history in this matter from the December 23, 2014 notes of testimony, our independent review of the certified record, and the trial court's March 9, 2015 opinion.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Commonwealth may take an appeal of right from an order that does not end the entire case if it certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.  **See** Pa.R.A.P. 311(d); **see also Commonwealth v. Torres**, 764 A.2d 532, 536 n.2 (Pa. 2001). The Commonwealth has included such a certification in this case.

At the [suppression] hearing, [Pennsylvania State Police] Trooper Jeffrey Ebeck testified he received a call from Patricia Mlynek, a broker for Advantage One Property. Ms. Mlynek advised Trooper Ebeck she had some concerns with the state of the property located at 122 Smullton Road in Rebers[b]urg, Pennsylvania, rented by [Appellee] and her family. Ms. Mlynek represented to Trooper Ebeck she was able to give him permission to enter the residence, as [Appellee] was "behind on the rent and . . . being allowed to live at the residence out of . . . kindness" on the part of Advantage One and the landlord, although eviction proceedings had been started. Ms. Mlynek advised Trooper Ebeck the back door of the residence would be unlocked.

Trooper Ebeck went to the residence and entered through the aforementioned rear door, which was unlocked. He took photographs of the residence and its condition and spoke to neighbors. [Appellee] was not at the residence when Trooper Ebeck arrived and he testified it took him several months to make contact with her. Ultimately, charges[2] were filed against [Appellee] on August 20, 2014, approximately six months after Trooper Ebeck's entry into the home.

(Trial Court Opinion, 3/09/15, at 1-2).

On October 17, 2014, Appellee filed a motion to suppress. The trial court held a hearing on Appellee's motion on December 23, 2014. On March 9, 2015, the trial court issued an order granting the motion. The instant, timely appeal followed. On March 27, 2015, the trial court ordered the Commonwealth to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). The Commonwealth filed its timely Rule 1925(b) statement on April 17, 2015. On April 23, 2015, the trial court

_____

[2] Appellee was charged with eight counts of endangering the welfare of children, 18 Pa.C.S.A. § 4304(a)(1), and three counts of cruelty to animals, 18 Pa.C.S.A. § 5511(c)(1).

- 2 -

issued an opinion, adopting its March 9, 2015 decision. *See* Pa.R.A.P. 1925(a).

On appeal, the Commonwealth raises the following question for our review:

1. Did the [trial] court err as a matter of law in granting [Appellee's] [m]otion to [s]uppress when the search was constitutionally valid pursuant to the doctrine of apparent authority[?]

(Commonwealth's Brief, at 4).

The Commonwealth challenges the trial court's grant of Appellee's motion to suppress, arguing that the trial court erred in suppressing the photographs taken by Trooper Ebeck. (*See id.* at 15-22). When the Commonwealth appeals from a suppression order, this Court follows a clearly defined scope and standard of review: we consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. *See Commonwealth v. Henry*, 943 A.2d 967, 969 (Pa. Super. 2008), *appeal denied*, 959 A.2d 928 (Pa. 2008). This Court must first determine whether the record supports the factual findings of the suppression court, and then determine the reasonableness of the inferences and legal conclusions drawn from those findings. *See id.* Here, because our review of the certified record supports the trial court's factual findings and because the inferences and legal conclusions that the trial court drew are both reasonable and legally correct, we affirm.

The Fourth Amendment to the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution require that searches be conducted pursuant to a warrant issued by a neutral and detached magistrate. A warrantless search or seizure is *per se* unreasonable unless it falls within a specifically enumerated exception. *See Commonwealth v. Lee*, 972 A.2d 1, 3 (Pa. Super. 2009). "A search warrant is not required, however, where a person with the proper authority unequivocally and specifically consents to the search." *Commonwealth v. Reid*, 811 A.2d 530, 544 (Pa. 2002), *cert. denied*, 540 U.S. 850 (2003) (citations and footnote omitted).

The Commonwealth argues that the apparent authority exception to the warrant requirement justifies the search in the instant matter. (*See* Commonwealth's Brief, at 8). We disagree.

> A third party with apparent authority over the area to be searched may provide police with consent to search. Third party consent is valid when police reasonably believe a third party has authority to consent. Specifically, the apparent authority exception turns on whether the facts available to police at the moment would lead a person of reasonable caution to believe the consenting third party had authority over the premises. If the person asserting authority to consent did not have such authority, that mistake is constitutionally excusable if police reasonably believed the consenter had such authority and police acted on facts leading sensibly to their conclusions of probability.

*Commonwealth v. Strader*, 931 A.2d 630, 634 (Pa. 2007), *cert. denied*, 552 U.S. 1234 (2008) (citations and quotation marks omitted). This Court has discussed the standard to be applied when determining whether a police

- 4 -

officer reasonably believed that a person possessed apparent authority to consent.

> . . . [W]e are not allowing *carte blanche* consent entries into residences with the police officer being able to ratify his entry at a later date suppression hearing by merely stating that he was mistaken as to the actual authority of the consenting party. We hold that the police officer's reasonable mistake must be judged from an objective standard based on the totality of the circumstances. Although the police officer's state of mind is one factor to be considered in determining the reasonability of the mistake, it is not the only factor. Moreover, the police officer's mistake must be reasonable. In ambiguous situations, those situations which would cause a reasonable person to question the consenting party's actual authority or if the consenting party's assertions of authority appear unreasonable, a police officer should make further inquiries to determine the status of the consenting party. Reliance on a third party's bald assertion in such situations could subject any search to the remedy of the exclusionary rule.

**Commonwealth v. Blair**, 575 A.2d 593, 598 (Pa. Super. 1990), *appeal denied*, 585 A.2d 466 (Pa. 1991) (citation and footnote omitted).

In the instant matter, the Commonwealth does not argue that Ms. Mlynek had actual authority to consent to the search. (**See** Commonwealth's Brief, at 15-17). The Commonwealth also does not claim that landlords have the actual authority to consent to a search of a tenant's residence. (**See id.** at 17); **see also Commonwealth v. Davis**, 743 A.2d 946, 951 (Pa. Super. 1999). Lastly, the Commonwealth concedes that Trooper Ebeck knew that a landlord could not consent to a search of a tenant's residence. (**See** Commonwealth's Brief, at 17; N.T. Suppression Hearing, 12/23/14, at 15).

Instead, the Commonwealth relies upon the Pennsylvania Supreme Court's plurality decision in **Commonwealth v. Hughes**, 836 A.2d 893 (Pa. 2003) and this Court's decision in **Commonwealth v. Basking**, 970 A.2d 1181 (Pa. Super. 2009), *appeal denied*, 986 A.2d 148 (Pa. 2009). The Commonwealth argues that these cases support its position that Trooper Ebeck's conclusion that Ms. Mlynek had apparent authority to consent to the search was reasonable. (**See** Commonwealth's Brief, at 21-22). We disagree.

In **Hughes**, a parole officer and a police officer observed the defendant standing outside a bar and wanted to question him about possible parole violations. **See Hughes**, **supra** at 896. However, they lost sight of the defendant and drove to his residence. **See id.** When the officers arrived, there was a group of teenage girls standing on the porch. **See id.** They asked if the defendant was home and the girls replied in the negative; the officers then asked the girls if they could go into the house to look for the defendant and the girls agreed. **See id.** at 896-97. Two of the girls opened the door of the residence and followed the officers inside; while searching the residence, they observed marijuana in plain view. **See id.** at 897. Our Supreme Court held that the girls had apparent authority to consent to the search. **See id.** at 904.

However, our Supreme Court based this holding on factors that are not present in the instant matter. **Hughes** placed great emphasis on the fact

- 6 -

that, as a parolee, the defendant had a diminished expectation of privacy. *See id.* at 899 ("The parole status of Appellant is significant because a parolee has a diminished expectation of privacy and the Fourth Amendment protections of a parolee are more limited than the protections afforded the average citizen.") (citations omitted). Moreover, given the opinion's concluding paragraph, it is questionable whether **Hughes** even applies in a case that does not involve parolees or individuals on probation. *See id.* at 904 ("Nevertheless, we need not reach the question of whether the 'apparent authority exception' should be applied in situations involving the average citizen because Appellant is a parolee and, consequently, he has a diminished expectation of privacy.") (citation omitted).

Further, in **Hughes**, the plurality emphasized the specific factual circumstances in that case, namely that the girls were present at the home and they were the ones who let the officers into the home, in finding that the officers reasonably believed the girls had apparent authority to consent to the search. *See id.* at 901. The opinion, described its reasoning thusly:

> In this case, the officers approached the approved parole residence of Appellant. Once they arrived, they noticed three teenage girls standing on the porch. They inquired whether Appellant was home and the girls responded that he was not. When Officer Vines asked the girls whether he and Officer Aldrich could enter the home and look for Appellant, they responded, "no problem," and **opened the door for them**. The girls voluntarily gave the officers consent to enter the home; they did not hesitate in giving the officers their consent—they even opened the door to the residence for the officers. Additionally, the girls followed the officers into the house. The actions of the girls provided the officers with the reasonable belief that the girls

- 7 -

possessed common authority over the premises permitting them to provide valid consent to enter the residence.

*Id.* (emphasis in original) (record citation omitted).

Likewise, ***Basking*** is factually distinct from the instant matter. In ***Basking***, the police went to the home of a defendant, who was already in custody, to search for a weapon used in an assault. ***See Basking***, ***supra*** at 1185. The homeowner was the adult defendant's mother and consented to the search of the residence. ***See id.*** She let the police into the home, accompanied them on a search of the first two floors, and volunteered that any contraband would likely be found on the third floor where defendant resided. ***See id.*** She then escorted the police to the third floor and told the police to remove any contraband. ***See id.*** However, at the suppression hearing, the mother admitted that she had not told police that she rented the third floor to defendant; she and defendant had agreed that no one in the house could access the third floor; and she had not been up to the third floor in years. ***See id.*** at 1185-86. In holding that the police reasonably believed that the mother had apparent authority to consent to the search, we focused on a combination of factors, namely the close familial relationship between the parties, the mother's ownership of the property, and her actions and assistance to the police during the search. ***See id.*** at 1191.

The factors emphasized in ***Hughes*** and ***Basking*** are simply not present in the instant matter. Appellee is not on parole and Ms. Mlynek is

not a close relative who owns the home and resides there. Ms. Mlynek was not present at the residence during the search and there is no evidence of record that she physically gave Trooper Ebeck access to the home.[3] In both **Hughes** and **Basking**, the plurality and this Court emphasized the presence at the scene of the individuals who consented to the search and their actions in physically giving the police access to the residence and accompanying them into the residence. **See Hughes**, **supra** at 901; **Basking**, **supra** at 1191; **see also Strader**, **supra** at 635 (finding officers reasonably believed occupant of apartment had apparent authority to consent to search where occupant answered door, spoke with police, stated he had authority to control who entered apartment, and agreed to let police enter); **Blair**, **supra** at 598-99 (holding police reasonably believed woman who opened door to defendant's home had apparent authority to consent to entry where she stated that defendant was present, officers did not seek entry to home but rather asked to speak with defendant, and in response woman "ushered"

_____

[3] While the Commonwealth argues that Ms. Mlynek left the door unlocked for Trooper Ebeck, the certified record does not support this statement. (**See** Commonwealth's Brief, at 19). At the suppression hearing, Trooper Ebeck testified that Ms. Mlynek told him on the telephone that the back door was unlocked. (**See** N.T. Suppression Hearing, at 10). Ms. Mlynek did not make any statements with respect to the door at the hearing. (**See id.** at 17-22). Thus, it is impossible to tell from the record whether Ms. Mlynek left the door unlocked for Trooper Ebeck or Appellee generally did not lock the back door.

them into home where defendant was in plain sight).  Thus, neither **Hughes** nor **Basking** provide legal support for the Commonwealth's position.

We next turn to the question of whether the facts in the instant matter support a conclusion that Trooper Ebeck's belief that Ms. Mlynek had apparent authority to consent to the search was reasonable under the standards enunciated in **Strader** and **Blair**.  **See Strader**, **supra** at 634; **Blair**, **supra** at 598.  Here, the Commonwealth lists fourteen different factors that it believes contributed to the reasonableness of Trooper Ebeck's belief that Ms. Mlynek had apparent authority to consent to the search of the residence.  (**See** Commonwealth's Brief, at 18-19).  These factors are:

> (1) a broker for the rental residence, Patricia Mlynek, reported concerns about the status of the property; (2) the condition of the property was at issue; (3) the welfare of animals living inside it were at issue; (4) [Children and Youth Services] had been to the residence on multiple occasions within the past eight (8) days to check on the welfare of the children; (5) [Children and Youth Services] was accompanied by uniformed law enforcement officers during these visits; (6) [Appellee] was behind on rent at the time of the search; (7) eviction proceedings had been initiated; (8) [Appellee] was only being allowed to stay there out of charity on the part of the rental agent, Ms. Mlynek—not the landlord; (9) [Appellee] was not home at the time Ms. Mlynek went to visit the property; (10) [Appellee] was not home at the time of [Trooper] Ebeck's search; (11) Ms. Mlynek specifically stated she was the individual who had the authority to make decisions regarding the residence; (12) Ms. Mlynek told [Trooper] Ebeck that [Appellee] no longer had a right to be there (thus Trp. Ebeck believed the issue of consent could not be granted by [Appellee]); (13) Ms. Mlynek told [Trooper] Ebeck you have permission to enter the home; and (14) Ms. Mlynek provided [Trooper] Ebeck with the sole means to gain entry to the residence; she left the back door unlocked—further evidencing her authority and control over the residence.

(Comonwealth's Brief, at 18-19) (quotation marks and record citations omitted). We find this list to be unpersuasive and many of the factual averments therein unsupported by the testimony at the **suppression hearing**. *See In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013) (reviewing court can look only to record developed at suppression hearing in determining propriety of suppression court's decision).

Initially, we note that the reasonableness of these factors must be balanced against Trooper Ebeck's knowledge that a landlord could not consent to the search of a tenant's residence. (**See** Commonwealth's Brief, at 17; N.T. Suppression Hearing, at 15). Further, the record does not support the Commonwealth's assertions with respect to factors three through five,[4] nine,[5] twelve,[6] and fourteen.[7] The Commonwealth fails to

_____

[4] There is no evidence that Trooper Ebeck had any detailed knowledge of the police, Children and Youth Services, and animal welfare involvement in the case. Ms. Mlynek did not testify that she informed Trooper Ebeck about these issues. (**See** N.T. Suppression Hearing, at 17-22). Trooper Ebeck simply testified that he was generally aware of concerns about animals and that there had been police and Children and Youth Services involvement, not that he was aware of the specific timetable. (**See id.** at 9).

[5] There was no testimony at the suppression hearing regarding Ms. Mlynek's visit to the home. (**See id.** at 9-22).

[6] Ms. Mlynek did not testify that she told Trooper Ebeck that Appellee no longer had the right to be in the residence. (**See id.** at 17-22). Further, Trooper Ebeck did not testify that Ms. Mlynek directly stated that Appellee had no right to be at the residence but that it was "construed;" he never testified that he believed that Appellee could not consent to a search of the residence. (**Id.** at 15).

*(Footnote Continued Next Page)*

explain how factors one and two contributed to the reasonableness analysis given Trooper Ebeck's awareness that a landlord could not give consent to search. We also do not find the fact that Appellee was not home at the time of the search persuasive, given there was simply no testimony at the hearing that Trooper Ebeck believed, or that Ms. Mlynek told him, that Appellee abandoned the residence (*See* N.T. Suppression Hearing, at 9-22). Further, Trooper Ebeck testified that he did not attempt to contact Appellee prior to searching the residence. (*See id.* at 13-14).

The remaining factors concern the alleged eviction proceedings and Ms. Mlynek's statements to Trooper Ebeck regarding them, telling him that she had authority to consent to search, and giving him express permission to search the home. The certified record supports the Commonwealth's contentions that Ms. Mlynek made these statements and that Trooper Ebeck relied upon them in making his decision that she had apparent authority to give him permission to search the residence.[8] (*See id.* at 10-12, 14-15, 17-

*(Footnote Continued)* ─────────────

[7] *See* footnote 3, *supra*.

[8] While Appellee does not question that Trooper Ebeck relied upon these statements in making his decision, the evidence of whether there were pending eviction proceedings is in dispute. Appellee testified that there were no evictions proceedings. (*See id.* at 7). Ms. Mlynek did testify that Appellee was behind in rent and that there were ongoing eviction proceedings, although her testimony about what stage the proceedings were at was equivocal. (*See id.* at 19-20). The Commonwealth did not offer any documentary proof in support of the claim. Because the Commonwealth did
*(Footnote Continued Next Page)*

20). However, we do not find Trooper Ebeck's reliance on these statements to be reasonable.

Trooper Ebeck knew that a landlord could not give consent to search, thus it was not reasonable for him to rely on a statement from someone in a position equivalent to a landlord that she had that authority. Further, Trooper Ebeck testified that he "took [Ms. Mlynek] at her word" with respect to the existence of eviction proceedings and that this meant that Appellee had no right to be on the property. (*Id.* at 15-17). He did not attempt to verify that this actually was true and did not attempt to substantiate his apparent belief that the pendency of eviction proceedings gave the landlord the authority to consent to a search. (*See id.*). We find Trooper Ebeck's conduct in this matter to be remarkably similar to the police conduct that this Court deplored in *Davis*.[9] We stated:

> . . . the United States Supreme Court has condemned a warrantless search where the police had abundant opportunity to obtain a warrant and there were no exigencies requiring immediate entry into the premises. Presently, there was no reason to justify the warrantless search of appellant's apartment. The officers simply should have secured the

---
*(Footnote Continued)*

not prevail at the hearing, we cannot accept its claim that there were ongoing eviction proceedings, only that Trooper Ebeck believed that there were. *See Henry*, *supra* at 969.

[9] While the issue in *Davis* was whether a landlord had actual authority under the common authority doctrine to consent to a search of a tenant's residence rather than apparent authority, its reasoning is both pertinent and persuasive. *See Davis*, *supra* at 951-52.

premises and obtained a warrant based upon [the apartment manager's] observations.

\* \* \*

The present case demonstrates the problems of the police proceeding into a premises without a warrant. The evidence which the police seized as a result of [the apartment manager's] consent to enter the apartment could have easily been seized legally via the execution of a valid warrant based upon the information provided by [him]. Presently, the police simply should have secured the premises without entering it and waited for the issuance of a warrant based upon the apartment manager's observations. Rather, the officers chose to enter the apartment illegally and view the contraband before proceeding to obtain a search warrant. To permit a warrantless search in this situation, we believe, emasculates the protections afforded to appellant and all citizens by the United States and Pennsylvania Constitutions.

*Davis*, *supra* at 952-53 (citations omitted).

Here, despite the Commonwealth's implications to the contrary (*see* Commonwealth's Brief, at 17-19), there were no exigent circumstances. Trooper Ebeck knew a landlord could not consent to the search. Despite this he took Ms. Mlynek "at her word" that, in fact, she had the authority to consent to the search without making any attempt whatsoever to verify either the factual or legal truth of her averments. This is exactly the type of ambiguous situation where, in *Blair*, we held that the police officer should make further inquiries into the circumstances and not rely on the third party's "bald assertion[s]." *Blair*, *supra* at 598. Thus, the Commonwealth's claim that the trial court should have denied the motion to suppress lacks merit. *See Strader*, *supra* at 634; *Blair*, *supra* at 598.

- 14 -

Accordingly, for the reasons discussed above, we affirm the order of March 9, 2015 granting Appellee's motion to suppress and remand the matter to the trial court.

Order affirmed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/24/2015