J-S15016-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANZORA ARNEZ SMITH | : | |
| | : | |
| Appellant | : | No. 992 WDA 2018 |

Appeal from the Judgment of Sentence Entered September 29, 2017
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0003149-2016

BEFORE:   GANTMAN, P.J.E., SHOGAN, J., and COLINS*, J.

MEMORANDUM BY SHOGAN, J.:                    FILED AUGUST 26, 2019

Appellant, Franzora Arnez Smith, appeals from the judgment of sentence entered following his convictions of one count of conspiracy of possession with intent to deliver ("PWID"), two counts of PWID, one count of possession of drug paraphernalia, two counts of simple possession of a controlled substance, one count of person not to possess a firearm, and one count of receiving stolen property.[1]  We affirm.

From April 20, 2016, until May 19, 2016, Appellant and his co-defendant, Stephen Barry-Gibbons ("Juan"), were persons of interest in relation to a drug trafficking investigation and surveillance being conducted at 1055 West 30th Street by the City of Erie Police Department.  During the course

_____

[1] 18 Pa.C.S. § 903, 35 P.S. §§ 780-113(a)(30), (a)(32), (a)(16), 18 Pa.C.S. §§ 6105(c)(2) and 3925(a), respectively.

_____

*   Retired Senior Judge assigned to the Superior Court.

of the investigation, several confidential informants were involved in controlled purchases of narcotics from Appellant and Juan. On the evening of May 19, 2016, while en route to a controlled purchase, the police stopped the vehicle in which Appellant was a passenger and placed him under arrest. Appellant was charged with the crimes stated above. On January 20, 2017, Appellant filed a motion to suppress all evidence obtained pursuant to the traffic stop and search of Appellant. A hearing was held on April 19, 2017, following which the motion to suppress was denied.

On August 16, 2017, at the conclusion of a three-day jury trial, Appellant was convicted of all charges. On September 29, 2017, the trial court sentenced Appellant to serve an aggregate term of incarceration of eighteen to thirty-six years. On February 6, 2018, Appellant filed a pro se post-sentence motion, which the trial court denied on February 9, 2018. After some procedural maneuvering, Appellant was granted leave by the trial court to appeal nunc pro tunc. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

A. Whether the trial court committed an abuse of discretion and/or error of law when it denied the Appellant's omnibus motion to suppress?

B. Whether the Commonwealth failed to present sufficient evidence to find the Appellant guilty beyond a reasonable doubt of conspiracy of [PWID] and [PWID]?

Appellant's Brief at 3 (full capitalization omitted).

- 2 -

We address Appellant's contentions in reverse order because he would be entitled to discharge if the evidence was insufficient to support the verdict. "Because a successful sufficiency of the evidence claim warrants discharge on the pertinent crime, we must address this issue first." Commonwealth v. Toritto, 67 A.3d 29, 33 (Pa. Super. 2013). Moreover, we do not review that type of allegation based upon a diminished record; instead, we consider all evidence adduced, even that which Appellant claims should be suppressed. See Commonwealth v. Koch, 39 A.3d 996, 1001 (Pa. Super. 2011) (explaining that "in conducting our [sufficiency] analysis, we consider all of the evidence actually admitted at trial and do not review a diminished record").

Appellant argues that the Commonwealth did not present sufficient evidence to convict Appellant of the crimes of conspiracy of PWID and PWID.[2] Appellant's Brief at 13-16. With regard to his conviction of conspiracy,

_____

[2] We observe that the argument portion of Appellant's brief also contains discussions challenging whether the Commonwealth presented sufficient evidence to support the convictions of person not to possess a firearm and receiving stolen property. Appellant's Brief at 16-17. However, these specific challenges were not set forth in Appellant's Pa.R.A.P. 1925(b) statement. Thus, we are constrained to conclude that these specific arguments are waived for purposes of appellate review. See Commonwealth v. Lord, 719 A.2d 306, 308 (Pa. 1998) (holding that where a trial court directs a defendant to file a concise statement pursuant to Pa.R.A.P. 1925, any issues not raised in that statement shall be waived). See also Commonwealth v. Oliver, 946 A.2d 1111, 1115 (Pa. Super. 2008) (noting that Lord "requires a finding of waiver whenever an appellant fails to raise an issue in a court-ordered Pa.R.A.P. 1925(b) statement").

Appellant contends that the record fails to establish that Appellant and Juan had any agreement that promoted or facilitated the commission of the crime of PWID.  Id. at 14.  Primarily, Appellant claims the Commonwealth failed to present evidence connecting Appellant to Juan or the apartment at 1055 West 30th Street.  Id.  In addition, Appellant asserts that "there is absolutely nothing that established that the Appellant committed any overt act in furtherance of a conspiracy with [Juan]."  Id. at 15.

Our standard of review is well established:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder['s].  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Estepp, 17 A.3d 939, 943-944 (Pa. Super. 2011).

The crime of criminal conspiracy is set forth in Section 903 of the Crimes Code which provides, in relevant part, as follows:

§ 903. Criminal conspiracy.

- 4 -

(a)  Definition of conspiracy. — A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1)  agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

> (2)  agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

(b)  Scope of conspiratorial relationship. — If a person guilty of conspiracy, as defined by subsection (a) of this section, knows that a person with whom he conspires to commit a crime has conspired with another person or persons to commit the same crime, he is guilty of conspiring with such other person or persons, to commit such crime whether or not he knows their identity.

(c)  Conspiracy with multiple criminal objectives. — If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship.

* * *

(e)  Overt act. — No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S. § 903.

Furthermore, we have explained the following:

> A conviction for criminal conspiracy, 18 Pa.C.S.A. § 903, is sustained where the Commonwealth establishes that the defendant entered an agreement to commit or aid in an unlawful act with another person or persons with a shared criminal intent and an overt act was done in furtherance of the conspiracy.

> The essence of a criminal conspiracy is the common understanding that a particular criminal objective is to be

- 5 -

accomplished. Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient. Rather, the Commonwealth must prove that the defendant shared the criminal intent, i.e., that the Appellant was "an active participant in the criminal enterprise and that he had knowledge of the conspiratorial agreement." The defendant does not need to commit the overt act; a co-conspirator may commit the overt act.

A conspiracy is almost always proven through circumstantial evidence. "The conduct of the parties and the circumstances surrounding their conduct may create 'a web of evidence' linking the accused to the alleged conspiracy beyond a reasonable doubt." The evidence must, however, "rise above mere suspicion or possibility of guilty collusion."

Among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.

Commonwealth v. Lambert, 795 A.2d 1010, 1016 (Pa. Super. 2002) (en banc) (citations omitted).

We initially address whether the Commonwealth presented sufficient evidence that Appellant and Juan had any agreement that promoted or facilitated the commission of the crime of conspiracy of PWID. Specifically, Appellant contends that the Commonwealth failed to present physical evidence that connected Appellant to the 1055 West 30th Street property. Appellant's Brief at 14.

Our review of the record reflects that the Commonwealth presented testimony from Andre Collins, who managed the rental of the apartment at 1055 West 30th Street. N.T., 8/14/17, at 30-50. Mr. Collins testified that Juan had been renting the apartment from July of 2015 through May of 2016. Id. at 33-34. Mr. Collins further stated that he had seen two or three other individuals going in and out of Juan's apartment. Id. at 41.

Also, Sergeant Matthew Benaci, a County Detective with the Erie County District Attorney's Office, testified at Appellant's trial. N.T., 8/15/17, at 36-65. Sergeant Benaci stated that, when Appellant was searched incident to his arrest, the police discovered two keys in Appellant's pocket. Id. at 46. The officer testified that "[t]hese keys fit the front outside exterior door to 1055 West 30th Street, as well as fit the secondary inside door that led into the apartment." Id. Sergeant Benaci explained, "It was the second floor apartment, so [there] was a lower door that locked as well as a staircase that also opened the second [door] into the apartment." Id. at 46-47. Police also recovered from Juan an identical set of keys that opened those doors. Id. at 47.

In addition, Detective Michael Chodubski, a member of the Drug Unit at the Erie Police Department, testified on the first day of Appellant's trial. N.T., 8/14/17, at 80-141. During his testimony, Detective Chodubski narrated a series of photographic slides showing the exterior of 1055 West 30th Street, which were taken during poice surveillance of the property. Id. at 83-87. The

series of photographs depicted Appellant leaving the property and then returning to the property, putting his hand up to the deadbolt of the exterior door, and then entering the property. Id. at 85-87. The testimony offered by Sergeant Benaci and Detective Chodubski was sufficient to connect Appellant to the apartment rented by Juan at 1055 West 30th Street. Appellant's contrary claim that there was not sufficient evidence to associate him with the apartment lacks merit.

Further, Appellant asserts that the Commonwealth failed to establish that an overt act was performed in furtherance of the conspiracy. Appellant's Brief at 15. Appellant claims there was no mention of a controlled buy performed by Appellant, which would have established an overt act in furtherance of the conspiracy. Id.

Our review of the record reflects the following transpired during testimony offered by Detective Chodubski:

> Q. And to your knowledge, was there anything recovered from [Appellant's] person that pertained to the two prior [controlled] buys on May 3rd and May 11th?
>
> A. There was a quantity of, I believe, cocaine and heroin and a sum of money, I believe it was around $1,500, [$]1,543 if I remember. And in that $1,500, there was $40 of the recorded buy money that we used in previous buys.

N.T., 8/15/17, at 29. This circumstantial evidence establishing Appellant's possession of proceeds from previous controlled purchases conducted during the investigation is sufficient to prove an overt act was conducted by Appellant in furtherance of his conspiracy with Juan to commit PWID. Hence, Appellant's

challenge to the sufficiency of the evidence to establish a conspiracy lacks merit.

In addition, Appellant argues that the Commonwealth presented insufficient evidence to establish that he committed the crime of PWID. Appellant's Brief at 15-16. Specifically, Appellant claims that, although the record establishes he was in possession of heroin when he was arrested, the Commonwealth failed to "introduce evidence as to exactly how much heroin was found on the Appellant." Id. at 16.

In order to uphold a conviction of PWID pursuant to 35 P.S. § 780-113(a)(30), the Commonwealth must prove beyond a reasonable doubt that the defendant possessed a controlled substance and did so with the intent to deliver it. Commonwealth v. Aguado, 760 A.2d 1181, 1185 (Pa. Super. 2000) (en banc). "The intent to deliver may be inferred from an examination of the facts and circumstances surrounding the case." Commonwealth v. Conaway, 791 A.2d 359, 362-363 (Pa. Super. 2002). Factors that may be relevant in establishing that drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant. Aguado, 760 A.2d at 1185. Moreover, we have held that circumstantial evidence is reviewed by the same standard as direct evidence—that is, that a decision by the trial court will be affirmed "so long as the combination of the evidence links the accused to the crime beyond a

reasonable doubt." Commonwealth v. Johnson, 818 A.2d 514, 516 (Pa. Super. 2003) (citations omitted).

Our review of the record reflects that, under the totality of the circumstances, the following circumstantial evidence is sufficient to sustain Appellant's conviction of PWID. Here, Detective Chodubski also testified on the second day of Appellant's trial. N.T., 8/15/17, at 23-36. The detective stated the following regarding what was discovered during the search of Appellant at the time of his arrest:

> Yes, in his rear pocket was a wallet that contained his photo I.D. We were able to identify him at that time as [Appellant]. And in his front right pocket was sandwich baggies containing quantities of heroin and crack cocaine. Also in the pockets was approximately – it was actually $1,534 cash, of which contained controlled confidential funds.

Id. at 44. Detective Chodubski was then handed the sandwich baggies while testifying and described the contents:

> Yes. So inside this bag, this is sealed in our evidence packaging and then the blue tape you see here was from the Pennsylvania State Police Crime Lab, which they will field test the drugs, tell you what it is, how much they weigh. And in this case, it was sandwich baggies that had numerous knotted sandwich baggies in it and these are all very, very small doses, street level sales, packaged for street level sales of heroin and crack cocaine. So there's little amounts of them and then they would take a corner of a sandwich baggy, put the drugs in it, tie it up real tight and then cut it and that's what you get. It's very small, very easily concealed, and … the drugs are contained in that. And that's very common for the Erie drug trade and how a drug is packaged.

Id. at 45.

This evidence, viewed in a light most favorable to the Commonwealth, is sufficient to establish that, when the police apprehended him, Appellant had possession of multiple packets of heroin and crack cocaine prepared for street sale. Appellant was also in possession of a significant sum of currency, which included money that had been utilized in previous controlled purchases by confidential informants. Given the totality of the circumstances, the Commonwealth presented sufficient evidence to establish that Appellant possessed the packets of narcotics with the intent to deliver. Accordingly, Appellant's assertion that the Commonwealth failed to present sufficient evidence to prove his possession of narcotics with intent to deliver lacks merit.

We next address Appellant's argument that the trial court erred in failing to grant his motion to suppress. Appellant's Brief at 9-13. Appellant claims that the police lacked the necessary probable cause to stop the vehicle in which he was a passenger and conduct a warrantless arrest. Id. at 11. In addition, Appellant contends that there were no exigent circumstances present that would have justified the warrantless arrest. Id. at 11-13. We disagree.

With respect to an appeal from the denial of a motion to suppress, our Supreme Court has stated the following:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record … Where the record supports the findings of the suppression court,

we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

Commonwealth v. Eichinger, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." Commonwealth v. Gallagher, 896 A.2d 583, 585 (Pa. Super. 2006). Moreover, we note that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. In re L.J., 79 A.3d 1073, 1087 (Pa. 2013).

Further, we are aware that Pa.R.Crim.P. 581, which addresses the suppression of evidence, provides in relevant part as follows:

> (H) The Commonwealth shall have the burden . . . of establishing that the challenged evidence was not obtained in violation of the defendant's rights.

Pa.R.Crim.P. 581(H).

> The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures, thereby ensuring the "right of each individual to be let alone." Schneckloth v. Bustamonte, 412 U.S. 218, 236, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973); Commonwealth v. Blair, 394 Pa. Super. 207, 575 A.2d 593, 596 (Pa. Super. 1990).

Commonwealth v. By, 812 A.2d 1250, 1254 (Pa. Super. 2002).

To secure the right of citizens to be free from intrusions by police, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those

interactions become more intrusive.  Commonwealth v. Beasley, 761 A.2d 621, 624 (Pa. Super. 2000).

It is undisputed that:

[s]tate case law recognizes three categories of interaction between police officers and citizens, which include: (1) a mere encounter, or request for information, which need not be supported by any level of suspicion, but which carries no official compulsion to stop or to respond; (2) an investigative detention, which must be supported by reasonable suspicion as it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest; and (3) arrest or custodial detention, which must be supported by probable cause.

Commonwealth v. Acosta, 815 A.2d 1078, 1082 (Pa. Super. 2003) (en banc).

"An arrest is defined as any act that indicates an intention to take the person into custody and subjects him to the actual control and will of the person making the arrest.  . . .  The test is an objective one, i.e., viewed in the light of the reasonable impression conveyed to the person subjected to the seizure rather than the strictly subjective view of the officers or the persons being seized."  Commonwealth v. Butler, 729 A.2d 1134, 1137 (Pa. Super. 1999) (quoting Commonwealth v. Rodriquez, 614 A.2d 1378, 1384 (Pa. 1992)).

It is well settled that the police may make a warrantless arrest if probable cause exists.  Commonwealth v. Santiago, 736 A.2d 624, 629-630 (Pa. Super. 1999).  Probable cause for an arrest exists if the facts and circumstances within the knowledge of the police officer at the time of the

arrest are sufficient to justify a person of reasonable caution in believing the suspect has committed or is committing a crime. Id. at 630. Probable cause justifying an arrest is determined by the totality of the circumstances. Commonwealth v. Colon, 777 A.2d 1097 (Pa. Super. 2001). Probable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference. Commonwealth v. Lindblom, 854 A.2d 604, 607 (Pa. Super. 2004). We have long stated that in determining whether probable cause existed in a particular situation, a court will look not just at one or two individual factors, but will consider the "totality of the circumstances" as they appeared to the arresting officer. Commonwealth v. Dennis, 612 A.2d 1014, 1016 (Pa. Super. 1992).

Applying these standards to the instant case, we conclude that the Commonwealth presented sufficient facts at the suppression hearing to establish probable cause, thereby justifying Appellant's arrest. In addressing the claim that the police lacked probable cause to justify the arrest, the trial court offered the following:

> There was ample justification for Appellant's seizure given the probable cause for his criminal activities ... .
>
> Attached hereto and incorporated herein is the Rule 1925(a) Opinion for the appeal of Appellant's co-defendant, [Juan], at Erie County Docket Number 3148 of 2016. As outlined in detail therein, Appellant was an active participant in a conspiracy to distribute heroin on multiple occasions from March 30, 2016 until the time of Appellant's arrest on May 19, 2016. The police investigation included multiple sales of heroin to confidential informants by Appellant acting in concert with [Juan]. For the reasons set forth in the attached Opinion, there was more than

probable cause to arrest Appellant for felony drug offenses on May 19, 2016.

Trial Court Opinion, 2/21/18, at 1-2. We observe that the trial court's opinion at Commonwealth v. Barry-Gibbons, Erie County Docket No. 3148 of 2016, includes an exhaustive recitation of the facts presented at the suppression hearing that support the determination that the police possessed probable cause to make a warrantless arrest, and we adopt that discussion as our own.[3] Barry-Gibbons Trial Court Opinion, 2/21/18, at 1-7. As the trial court ultimately observed:

> All of the three confidential informants were corroborated by the surveillance conducted by the police, who observed [Juan] and [Appellant] in action, starting from 1055 West 30th Street to the designated meeting sites. Both [Juan] and [Appellant] had a house key to enter 1055 West 30th Street. [Juan] was a lessee at 1055 West 30th Street since July, 2015.

Barry-Gibbons Trial Court Opinion, 2/21/18, at 10.

The totality of the facts, within the knowledge of the police at the time of the Appellant's arrest, was sufficient to justify a person of reasonable caution in believing that Appellant had committed a crime and was in the process of proceeding to yet another drug transaction. Santiago, 736 A.2d at 629-630. Therefore, the police possessed probable cause necessary to permit the warrantless arrest of Appellant, and the suppression court properly

_____

[3] The parties are directed to attach a copy of that opinion in the event of further proceedings in this matter.

denied Appellant's motion to suppress. Hence, Appellant's contrary argument lacks merit.

In addition, with regard to Appellant's allegation that there were no exigent circumstances present to justify the warrantless arrest, the trial court offered the following analysis, which we adopt as our own:

> There were also exigent circumstances that justified the warrantless arrest of Appellant. At the time of his arrest on May 19, 2016, Appellant was likely en route to another sale of heroin to a confidential informant. As part of the undercover drug investigation of Appellant and [Juan], the police had a variety of contacts with customers of Appellant and his co-defendant. Some of these contacts were with admitted heroin addicts who were buying their heroin from Appellant and/or [Juan] but were not working as confidential informants with the Erie Police Department. These addicts were not arrested or taken into custody. Thus, the distinct possibility existed that these addicts would tip off the police investigation to Appellant and/or [Juan].

> Coupled with these circumstances was the concern for the safety of the confidential informant who was about to engage in another buy from Appellant. If Appellant was arrested after this transaction, it would expose that confidential informant and place him/her in harm's way.

> Lt. Nolan described the events of May 19, 2016 and his reasons to act at that time:

>> "... another drug transaction was imminent, it was very likely they were en route to that transaction. So, based on everything – that's why I went into the lengthy explanation - everything stacked up and led me to believe that there was probable cause at that point to take [Appellant] in custody, stop the vehicle and proceed with the investigation.

>> Q. Well, you had - - you were aware that through the investigation, they were trying to - - the confidential informant was trying to - - the confidential informant

- 16 -

was trying to do controlled buys with [Appellant], right?

A. Yes.

Q. And is it your testimony that there were actual controlled buys done by [Appellant]?

A. Yes.

Q. And so the reason why you would not allow this last controlled buy to move forward prior to making the traffic stop is what?

A. Because all of the informants in this case were fearful about these individuals. [Juan] was well known to have a prior murder conviction. So, they were fearful of being exposed as working with the police. They didn't want to suffer any retaliation. So, we knew the 19th was the day this was all going to go down. The fact that [Appellant] was on the way to meet the informant, I didn't want to let him get that close, because I didn't want - - that would, to me, would reduce the likelihood that he would be able to clearly identify that that informant who ordered up those drugs had set him up. And, therefore, that was providing a layer of protection to the CI.

Pre-Trial Hearing Transcript p. 28-29.

Based on the foregoing explanation, there were exigent circumstances that necessitated the warrantless arrest of Appellant on May 19, 2016.

Trial Court Opinion, 2/21/18, at 2-3.

In summary, the police possessed probable cause necessary to permit the warrantless arrest of Appellant, and attendant exigent circumstances were present to justify the arrest. Therefore, the suppression court properly denied

Appellant's motion to suppress, and Appellant's contrary argument lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/26/2019

COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS

                    :

           v.         : OF ERIE COUNTY, PENNSYLVANIA

                    :

STEPHEN BARRY-GIBBONS : DOCKET NO. 3148 OF 2016

## RULE 1925 (A) OPINION

The jury trial and sentencing in this matter were before a Senior Judge, the Honorable Judge Michael E. Dunlavey. This Court presided over Appellant's pre-trial Motion to Suppress.

This Opinion addresses the challenge on appeal to the denial of Appellant's Motion to Suppress. The remaining issues raised in Appellant's Concise Statement of Matters are waived and/or premature.

## MOTION TO SUPPRESS

In his written Motion to Suppress, Appellant argues there was not probable cause for the issuance of the search warrant for Appellant's apartment.

An evidentiary hearing was held on April 19, 2017. The Commonwealth adduced the testimony of Lieutenant Michael Nolan and Sargeant Michael Chodubski. The Commonwealth introduced the search warrant in question, which was issued on May 19, 2016, with Sgt. Chodubski as the affiant.

Sgt. Chodubski has been an officer with the Erie Police Department since September, 1996 and a member of the Drug and Vice Unit since November, 2002. He has been involved in at least 175 investigations of the trafficking of all forms of illegal drugs, including heroin and cocaine.



As of the date of the suppression hearing, Lt. Nolan had been a police officer for the City of Erie for 25 years, including the last 22 years with the Drug and Vice Unit. Lt. Nolan was also the head of the Drug and Vice Unit. He has likewise been involved in hundreds of investigations and arrests for drug offenses for all forms of illegal drugs. In sum, both officers were seasoned, experienced investigators in the field of drug trafficking.

Lt. Nolan was involved in a prior investigation of Appellant. On January 3, 2007, Appellant was arrested by the Erie Drug and Vice Unit for various offenses related to his possession of over 200 grams of cocaine and nearly 5 grams of heroin. Appellant was convicted of felony drug offenses and a criminal conspiracy. Appellant was sentenced to 4 to 10 years of incarceration. This history was known to Lt. Nolan when the investigation of this case unfolded.

On March 30, 2016, Sgt. Chodubski debriefed a person about his/her supplier of heroin. This person, who would become Confidential Informant #1 (CI 1) in the search warrant for this case, identified his/her supplier of heroin as "Juan". When shown a photograph of Appellant , CI 1 positively identified Appellant as Juan, his/her heroin dealer. Appellant informed CI 1 that he regularly travels to Detroit to get heroin and that he would have a supply of heroin to sell whenever needed by CI 1. To contact him when CI 1 wanted to buy heroin, Appellant provided two phone numbers, 865-440-3931 and/or 814-572-0836. Appellant informed CI 1 that if he was out of town, he would give one of the two phones to a person called "D", who could sell Appellant heroin to CI 1. "D" was described by CI 1 as a tall, light-skinned male. Within the last two months, CI 1 bought heroin from Appellant and/or "D" at least 15 times.

2

CI 1 was no stranger to the Erie Drug and Vice Unit. CI 1 had previously provided information on at least 6 individuals involved in drug trafficking in the City of Erie and made controlled buys for law enforcement in the past. According to Sgt. Chodubski, CI 1 has never misled or provided false information in the past to law enforcement.

As a result of the March 30, 2016 conversation with Sgt. Chodubski, CI 1 agreed to make a controlled buy from Appellant. However, at that time, Appellant was out of town so CI 1 would make the buy from D. Thereafter a controlled buy was arranged. CI 1 was searched and no drug contraband was found. CI 1 called 865-440-3931 and arranged a drug buy with D, who directed CI 1 to meet him in the area of East 26th Street and East Avenue. CI 1 was given buy money by the police. Surveillance was set up in the area and CI 1 was observed by the police meeting with a tall, light-skinned male. A hand-to-hand exchange was observed during a brief meeting between CI 1 and D. CI 1 met immediately afterwards with the police and turned over the heroin purchased from D. No contraband or money was found on CI 1. All of the events before, during and after the drug deal were observed by the constant police surveillance of CI 1.

This same scenario was repeated on April 11, 2016. CI 1 told the police that Appellant was still out of town. CI 1 called D at 865-440-3931 and was told to meet him at East 27th and Perry Streets. All of the same police controls were in place and corroborated CI 1's purchase of heroin from D at that time.

On April 20, 2016, CI 1 informed Sgt. Chodubski that Appellant was in town so a controlled buy could be arranged. This information was corroborated when CI 1 called 865-440-3931 and Appellant answered the phone. Appellant informed CI 1 that he was shopping at a nearby mall, the Millcreek Mall, and would call him when he was done. CI 1's

3

information was corroborated when the police found Appellant shopping at the Millcreek Mall. Thereafter the police kept Appellant under continual surveillance, including when he left the mall driving a white Chrysler with an Ohio license plate that came back to a rental company. There was a female passenger in Appellant's vehicle. Appellant drove from the mall to his apartment at 1055 West 30th Street in the City of Erie. The two exited the Chrysler and entered Appellant's apartment through the west side door of the building.

By that time, CI 1 was unavailable to make a controlled buy. Nonetheless, the police kept Appellant's building under surveillance. Shortly, Appellant emerged alone from his building, entered the white Chrysler and drove several blocks away, meeting with an individual who was then unknown to the police. The individual met with Appellant briefly, the two then parted ways. Appellant drove back to his apartment.

Unbeknownst to Appellant, the individual who met with him was subsequently stopped by the police, who inquired about the interaction with Appellant. The individual provided a host of details about purchasing heroin from Appellant. This individual subsequently became confidential informant #2 (CI 2) in the search warrant in this case. CI 2 admitted that he/she had just bought heroin from Appellant. When shown a picture of Appellant, CI 2 positively identified him as Juan, his/her supplier of heroin. CI 2 went on to say that Juan had given a phone number of 865-440-3931 to call when heroin was needed. CI 2 stated that Juan leaves town often and told CI 2 that when he was unavailable, another male would answer the phone and give instructions where to meet. Among the males CI 2 met to buy heroin using the phone number provided by Appellant was a tall, light-skinned male.

Notably, all of the information provided by CI 2 independently corroborated all of the information provided by CI 1, including Appellant's identity as Juan; Appellant's phone

4

number of 865-440-3931 – the same number as used for CI 1's two prior buys from D; the availability of heroin from a tall, light-skinned male if Appellant was out of town; and the directions where to meet to consummate the deal.

In addition, CI 2 gave the police the name of "JB" as another black male CI 2 bought heroin from in Appellant's absence using Appellant's phone number. The transactions involving CI 2 and JB occurred on the west side of Erie, in the area of West 32nd and Cascade Streets.

JB, whose identity was not then known to the police, would later become involved in sales to CI 1 under the same scenario as described by CI 2. Upon his subsequent arrest, JB would be identified as Franzora Smith, Appellant's co-defendant in this case.

On May 3, 2016, a controlled buy was arranged through CI 1. At this time, CI 1 told the police that Appellant was out of town so CI 1 was not sure who would be answering Appellant's phone. CI 1 called 865-440-3931 and JB answered. CI 1 informed the police JB is believed to be Appellant's cousin. JB instructed CI 1 to meet him on the west side of Erie at West 26th and Cranberry Streets. CI 1 was searched and no contraband was found. CI 1 was given buy money. Surveillance was set up at Appellant's apartment at 1055 West 30th Street and at the meeting site. A tall black male, identified by CI 1 as JB, was observed by the surveillance team exiting the west side door of Appellant's building and walking to the area of West 26th and Cranberry. There JB met with CI 1 and exchanged heroin for cash. JB was then observed walking directly back to Appellant's apartment building at 1055 West 30th Street and using a key to gain entrance through the west side door.

On May 11, 2016, another controlled buy occurred. Appellant was again out of town but CI 1 was given a new number to call, to-wit: 814-806-6877. When CI 1 called this new

5

number, JB answered and directed CI 1 to again meet him in the area of West 26th and Cranberry Streets. The same controls were utilized by the police. Surveillance was again in place at Appellant's apartment, 1055 West 30th Street, and the meeting site. The police observed JB leave the west side door of Appellant's apartment building, enter a tan Mercury vehicle and drive to the meeting site. There, CI 1 entered JB's vehicle for a short time where JB sold heroin to CI 1 using the EPD buy money.

After JB's sale of heroin to CI 1, the police continued surveillance of JB and observed another individual enter JB's vehicle, stay for a short time, then exit. This individual was not known to the police.

Once that individual was out of JB's sight, he/she was stopped by the police and questioned about what just occurred inside the tan Mercury vehicle. This individual, who became confidential informant #3 (CI 3) in the search warrant in this case, advised the police that he/she was a heroin addict and that he/she had just bought heroin from the B/M in the tan Mercury. CI 3 went on to relate that Appellant was the supplier of heroin. When shown Appellant's picture, CI 3 positively identified the person therein as "Juan." According to CI 3, Juan transports heroin into Erie from Detroit and has other people selling it for him. Juan gave CI 3 a phone number to call to buy heroin. If Juan was out of town, another person would answer the phone and arrange where the deal would occur. CI 3 used Appellant's phone number to buy heroin from a tall, light-skinned male in the area of East 27th and East Avenue. CI 3 stated these sales used to occur on the east side of Erie, lately all of the transactions have been on the west side of Erie.

Notably, the phone number CI 3 used to call Appellant was 814-806-6877, which is the same number CI 1 was given and used for the May 11, 2016 controlled buy from JB on

6

the west side of Erie. During this latest transaction with JB, CI 3 was given a new number to call for the next transaction, 920-371-1787. CI 3 believed this latest number was Juan's personal phone number.

On May 19, 2016, CI 3 contacted Sgt. Chodubski and related that "Juan" had called and was in town with a new supply of heroin. The police then set up surveillance at Appellant's apartment at 1055 West 30th Street. Parked there was a silver Dodge Charger with a Michigan registration plate that came from a rental company. Around 4:20 p.m., the police observed Appellant exit his apartment building alone, enter the silver Charger and drive to the area of West 34th and Cascade Streets. A short time later, a white female entered Appellant's vehicle and exited after several minutes. Appellant then drove off.

The white female was then stopped by the police and asked about her encounter with Appellant. The woman admitted she was a heroin addict and that her supplier of heroin was recently arrested. Her supplier gave the person she just met with her phone number. She was then called on her phone from the number of 920-371-1787 and told to meet at West 34th and Cascade, where she would be fronted a quantity of heroin. When she saw a silver Charger pull into the area, her phone rang. She got into the silver Charger and was provided 5 grams of heroin for $500. This person told the white female that the quality of this heroin was not that strong, but that he was going out of town for another supply of heroin. She then exited the vehicle. Notably, Appellant was positively identified by the police surveillance team as the driver/sole occupant of the silver Charger during the sale of heroin to the white female.

Also on May 19, 2016, Sgt. Chodubski spoke to the landlord for 1055 West 30th Street and learned that Appellant signed a lease for the upstairs apartment in that building in July, 2015.

7

Based on the foregoing, there was a wealth of probable cause for the issuance of a search warrant on Appellant's apartment at 1055 West 30th Street on May 19, 2016. Given his 20 years of experience as a police officer, including 14 years working solely in the Drug and Vice Unit, Sgt. Chodubski readily knew what was occurring. It was equally obvious to the seasoned eyes of Lt. Nolan, who conducted a majority of the police surveillance in this case and knew Appellant from Appellant's prior conviction for trafficking in cocaine and heroin in 2007.

One does not even need the experience and training of these officers to recognize what was occurring. Very simply, Appellant was importing heroin into Erie from Detroit. He would provide his customers with a phone number to call to buy heroin. The customer was directed to meet at a certain area of Erie. These transactions occurred in different areas to avoid detection and so that the customers would not know where Appellant was keeping his supply of heroin for security purposes. If Appellant was unavailable to sell when the customer would call, Appellant had associates such as D or JB sell heroin for him.

In order to stay ahead of police detection, Appellant's operation had to be mobile. Hence, the drug deals were first occurring on the east side of Erie. Appellant was likely using 2710 East Avenue as a "stash" house, i.e. where he would hide his drug supply. Thereafter, the deals were moved to the west side of Erie, where Appellant used 1055 West 30th Street as a stash house. At different times, Appellant and JB were seen leaving from 1055 West 30th Street and not stopping at any other locations to pick up heroin prior to separate heroin sales to CI 1, CI 3 and the white female. The phone numbers provided to customers by Appellant were used for a limited time and then changed. The person providing the heroin would vary. The person selling the heroin made the determination where the best place was to meet.

These conclusions are not whimsical or speculative. Instead, these conclusions are based on the reliable information provided independently by four separate people. The first person was CI 1, who had a proven history of providing trustworthy information to the police. CI 1 provided the factual basis for Appellant's entire operation. These details include Appellant's street name as Juan; that Juan frequently goes to Detroit to re-supply with heroin to sell in Erie; Juan provided a phone number to call to buy heroin; the phone number would change; the call would be answered by Appellant or his subordinate D, later another subordinate known as JB; the buyer would be directed to the meeting site, which was never at Appellant's stash house.

All of the information provided by CI 1 from March 30, 2016 onward was corroborated by CI 2 on April 11, 2016. CI 2 was a separate customer of Appellant. CI 2 had no idea what information CI 1 had given to the police, yet CI 2 confirmed everything CI 1 previously provided to the police about Appellant's trafficking of heroin.

In turn, CI 1 and CI 2 were independently corroborated *en toto* by the information given by CI 3 on May 11, 2016. CI 3 was yet another customer of Appellant who had no idea what CI 1 and CI 2 had told the police. Yet all three of these confidential informants identified Appellant via a photograph as "Juan", their Detroit heroin dealer. Each confidential informant separately outlined the same modus operandi of Juan, including the phone numbers given by Appellant, the names of Appellant's associates and the manner in which the deals were structured.

In addition, these three confidential informants were corroborated by the white female heroin addict who bought heroin from Appellant on May 19, 2016 at West 34th and Cascade Streets. This woman had no knowledge of what the three confidential informants told the

9

police. Yet, she admitted she bought heroin that day from Appellant, who called her from the same number recently given to CI 3 on May 11, 2016. Appellant told her he gets his heroin from Detroit.

All of the information provided by the three confidential informants and the white female heroin addict was not only consistent, but current, starting March 30, 2016 through the date of the search warrant on May 19, 2016.

All of the three confidential informants were corroborated by the surveillance conducted by the police, who observed Appellant and JB in action, starting from 1055 West 30th Street to the designated meeting sites. Both Appellant and JB had a house key to enter 1055 West 30th Street. Appellant was a lessee at 1055 West 30th Street since July, 2015.

Appellant was driving a white Chrysler rental car with an Ohio license plate on April 20, 2016 in Erie. Appellant was next seen driving a silver Dodge Charger rental car with a Michigan license plate on May 19, 2016 in Erie. To state the obvious, Detroit is located in Michigan and Ohio is between Michigan and Pennsylvania. It is common for drug dealers to insulate themselves from law enforcement by the use of various rental cars.

The police in this case were also acting on information provided by at least one concerned neighbor of 1055 West 30th Street, who observed activity that caused him/her to report suspicious drug activity to the police.

To allege there was not probable cause for the search warrant issued on May 19, 2016 is to turn a blind eye to the reality of what was occurring. Accordingly, this is a baseless claim on appeal.

10

## ISSUES THAT ARE WAIVED

In Paragraphs 2 (a-c) of his Concise Statement of Matters Complained of On Appeal, Appellant raises suppression issues that were not preserved in his Motion to Suppress. Specifically, for the first time, Appellant claims that all evidence seized after his alleged illegal arrest should be suppressed. Paragraph 2(a). Likewise, Appellant now contends it was error in "failing to suppress all evidence seized from Appellant's vehicle without probable cause to secure a search warrant." Paragraph 2(b). Thirdly, Appellant argues it was error not to grant suppression because 1055 West 30th Street was "searched prior to obtaining probable cause to secure a search warrant." Paragraph 2(c).

These issues were not raised or preserved in Appellant's written Motion to Suppress as filed on December 30, 2016. Accordingly, these issues were not raised or addressed at the suppression hearing held in this matter on April 19, 2017. Hence these issues were not preserved for appeal and are waived.

To the extent Paragraph 2(c) can be construed as a challenge to the probable cause for the search warrant, that issue has not been waived. However, it has been exhaustively examined in the preceding section.

11

## PREMATURE ISSUES

The remaining issues in Appellant's Concise Statement of Matters allege various claims of ineffective assistance of trial counsel. These claims cannot be addressed based on the existing record. Accordingly these claims are premature and can be raised as part of a petition for relief under the Post Conviction Relief Act.

BY THE COURT:

Date: ___2/21/14___

_____
WILLIAM R. CUNNINGHAM, JUDGE

cc:  District Attorney's Office
   Stephen Barry-Gibbons JS2304, SCI Huntingdon, 1100 Pike Street, Huntingdon PA
   16654-1112

12