J-S17023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM DELAROSA | : | |
| | : | |
| Appellant | : | No. 2725 EDA 2023 |

Appeal from the Judgment of Sentence Entered September 21, 2023
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-CR-0000790-2021

BEFORE:  BOWES, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY KING, J.:                                **FILED JULY 5, 2024**

Appellant, William DelaRosa, appeals from the judgment of sentence entered in the Monroe County Court of Common Pleas, following his bench trial convictions for possession of a controlled substance with intent to deliver ("PWID"), possession of a small amount of marijuana, tampering with physical evidence, two counts of possession of drug paraphernalia, intentional possession of a controlled substance by a person not registered, and summary traffic offenses.[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows. In January 2020, Pennsylvania State Trooper Christopher Gaetano, while parked near Route 80 near Pocono Township, observed a black Dodge Charger traveling in the left lane of a two-lane road in violation of the Vehicle Code.

_____

[1] 35 P.S. §§ 780-113(a)(30), (a)(31), 18 Pa.C.S.A. § 4910(1), 35 P.S. §§ 780-113(a)(32), (a)(16), 75 Pa.C.S.A. §§ 3362, 3309, and 3313, respectively.

Trooper Gaetano followed the vehicle and recorded it traveling at 70 mph in a 65-mph zone. Trooper Gaetano initiated a traffic stop, smelled an odor of marijuana inside the vehicle, and observed a marijuana shake[2] in plain view. Several air fresheners hung inside the vehicle and, when asked, Appellant provided an incorrect rental agreement.[3] Appellant's driver's license was broken in half, and Trooper Gaetano initially had difficulty identifying him. When questioned about his destination, Appellant changed his story several times.

Appellant verbally consented to a search of the vehicle and Trooper Gaetano asked him to exit the vehicle. Trooper Gaetano performed a pat-down search of Appellant. While Trooper Gaetano waited for backup, Appellant paced nervously. Appellant then rescinded verbal consent to search. After Trooper Gaetano then advised Appellant that he would call a K-9 officer which would prolong the encounter, Appellant again provided verbal consent to search. Trooper Gaetano searched the vehicle and recovered nine individually wrapped cellophane packets containing methamphetamine from a duffel bag in the trunk. Trooper Gaetano then arrested Appellant.

_____

[2] Trooper Gaetano described a marijuana shake as small particles of marijuana.

[3] The rental agreement that Appellant showed the trooper was for a separate vehicle not linked to the vehicle Appellant was driving during the traffic stop.

At some point following the traffic stop, Trooper Gaetano determined that Appellant was renting the black Dodge Charger; Appellant provided a receipt for the vehicle, but not the actual copy of the rental agreement.

Subsequently, Trooper Gaetano located a container of marijuana beneath Appellant's vehicle. The motor vehicle recording ("MVR") of the encounter showed Appellant, after exiting his vehicle, removing a container of marijuana from his pocket and kicking it under the vehicle. Additionally, during the pat-down of Appellant, Trooper Gaetano located rolling papers which contained marijuana shake and residue. Trooper Gaetano also confiscated two cellphones from Appellant's person.

The Commonwealth charged Appellant with various crimes and on June 22, 2021, Appellant filed a suppression motion. In it, Appellant argued that he had not consented to a search of his vehicle, that no exigent circumstances existed to allow a warrantless search of the vehicle, and that the Commonwealth's warrantless search of his car was conducted without his knowing, intelligent, and voluntary consent. (Suppression Motion, filed 6/22/21, at ¶11). As a result, Appellant sought the suppression of all items seized as "fruit of the poisonous tree." (*See id.*).

On October 26, 2021, the court conducted a suppression hearing. During this hearing, the Commonwealth presented evidence in the form of the preliminary hearing transcript and the MVR.[4] At the conclusion of the hearing, the court held the matter under advisement. On March 16, 2022, the trial court issued an opinion and order denying the suppression motion.

_____

[4] The preliminary hearing transcript and MVR were admitted as joint exhibits of the Commonwealth and the defense. No additional testimony was taken at the suppression hearing. Defense counsel did not object to this procedure.

Appellant proceeded to a bench trial, and the court convicted him of the aforementioned charges. On September 21, 2023, the court sentenced Appellant to an aggregate term of 60 to 120 months' incarceration, followed by two years' probation. Appellant did not file post-sentence motions. Appellant timely filed a notice of appeal on October 19, 2023. On November 11, 2023, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1926(b) statement on November 10, 2023.

Appellant raises a single issue for our review:

> Did the trial court err or abuse its discretion in failing to suppress all evidence obtained from an illegal seizure and search of the Appellant's person, vehicle and content of that vehicle where the trooper unreasonably and illegally extended the time necessary to complete a traffic stop and Appellant did not provide voluntary and knowing consent to a search and any consent given resulted from both express and implied duress or coercion, all of which resulted in a violation of the United States Fourth Amendment of the United States Constitution and Article 1, § 8 of the Pennsylvania Constitution?

(Appellant's Brief at 3).

The following principles govern our review of an order denying a motion to suppress:

> An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains

uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

*Commonwealth v. Ford*, 175 A.3d 985, 989 (Pa.Super. 2017), *appeal denied*, 647 Pa. 522, 190 A.3d 580 (2018).

Appellant asserts that the court erred in denying his suppression motion because the initial traffic stop escalated into an illegal seizure. Appellant argues that he has standing to challenge the search because he was charged with a possessory offense. Appellant contends that the evidence introduced at the suppression hearing established that he was renting the vehicle and had a reasonable expectation of privacy in the vehicle. Appellant claims that reasonable suspicion and exigent circumstances did not exist to justify the search.

Further, Appellant maintains that his initial consent to search was equivocal and involuntary. Even if he did give voluntary and unequivocal consent initially, Appellant submits that his renewed consent was involuntary, where Trooper Gaetano interrogated him while he stood by the roadside in the cold and the trooper did not inform Appellant that he could decline to give consent. Appellant concludes that the Commonwealth conducted an illegal search and seizure, and this Court must grant relief. We disagree.

- 5 -

This Court has explained:

> The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect citizens from "unreasonable searches and seizures, including those entailing only a brief detention." ***Commonwealth v. Strickler***, 563 Pa. 47, 56, 757 A.2d 884, 888 (2000). Specifically, police officers may not conduct a warrantless search or seizure unless one of several recognized exceptions applies. ***Commonwealth v. Blair***, [575 A.2d 593, 596 (Pa.Super. 1990)]. If a defendant's detention violates the Fourth Amendment, then any evidence seized during that stop must be excluded as fruit of an unlawful detention. ***Id.***

***Commonwealth v. Mattis***, 252 A.3d 650, 654 (Pa.Super. 2021).

"[G]enerally under Pennsylvania law, a defendant charged with a possessory offense has automatic standing to challenge a search. However, in order to prevail, the defendant, as a preliminary matter, must show that he had a privacy interest in the area searched." ***Commonwealth v. Jones***, 874 A.2d 108, 117-18 (Pa.Super. 2005) (internal citations omitted).

> An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

***Id.*** at 118 (citation omitted).

Police interactions with citizens are categorized into three general tiers of increasing intrusiveness, which require increasing levels of suspicion on the part of an officer who initiates them: (1) mere encounters, which require no

suspicion; (2) investigative detentions, which require reasonable suspicion; and (3) custodial detentions, which require probable cause. ***Commonwealth v. Beasley***, 761 A.2d 621, 624 (Pa.Super. 2000), *appeal denied*, 565 Pa. 662, 775 A.2d 801 (2001).

An "investigative detention" is interchangeably labeled as a "stop and frisk" or a "***Terry*** stop."[5] ***Commonwealth v. Brame***, 239 A.3d 1119, 1127 (Pa.Super. 2020), *appeal denied*, ___ Pa. ___, 251 A.3d 771 (2021).

> An investigative detention, unlike a mere encounter, constitutes a seizure of a person and thus activates the protections of Article 1, Section 8 of the Pennsylvania Constitution. To institute an investigative detention, an officer must have at least a reasonable suspicion that criminal activity is afoot. Reasonable suspicion requires a finding that based on the available facts, a person of reasonable caution would believe the intrusion was appropriate.
>
> *        *        *
>
> Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity.

***Jones, supra*** at 116 (internal citations omitted).

To ensure officers' safety during a traffic stop, police may order both drivers and passengers to exit the vehicle, even without reasonable suspicion that criminal activity is afoot. ***Commonwealth v. Malloy***, 257 A.3d 142, 150 (Pa.Super. 2021). During a traffic stop, the officer "may ask the detainee a

---

[5] ***Terry v. Ohio***, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." **Commonwealth v. Wright**, 224 A.3d 1104, 1109 (Pa.Super. 2019), *appeal denied*, 661 Pa. 533, 237 A.3d 393 (2020). "Further, 'if there is a legitimate stop for a traffic violation…additional suspicion may arise before the initial stop's purpose has been fulfilled; then, detention may be permissible to investigate the new suspicions.'" **Id.** (quoting **Commonwealth v. Chase**, 599 Pa. 80, 93 n.5, 960 A.2d 108, 115 n.5 (2008)).

The smell of marijuana, alone, is an insufficient basis for reasonable suspicion that criminal activity is afoot. **Commonwealth v. Cunningham**, 287 A.3d 1, 10 (Pa.Super. 2022), *appeal denied*, ___ Pa. ___, 302 A.3d 626 (2023). While possession of marijuana itself is no longer *per se* illegal, possession is still illegal for those not qualified under the Medical Marijuana Act ("MMA"). **Commonwealth v. Barr**, ___ Pa. ___, ___, 266 A.3d 25, 41 (2021). This Court has held "that the officer could consider the odor of raw marijuana, as well as other factors, in making [a reasonable suspicion] determination." **Commonwealth v. Sloan**, 303 A.3d 155, 165 (Pa.Super. 2023).

Additionally, "[a]s a general rule, 'a warrant stating probable cause is required before a police officer may search for or seize evidence.'" **Commonwealth v. Heidelberg**, 267 A.3d 492, 502 (Pa.Super. 2021) (*en banc*), *appeal denied*, ___ Pa. ___, 279 A.3d 38 (2022) (quoting **Commonwealth v. Anderson**, 40 A.3d 1245, 1248 (Pa.Super. 2012)).

"Absent the application of one of a few clearly delineated exceptions, a warrantless search or seizure is presumptively unreasonable." *Id.* (quoting *Commonwealth v. Whitlock*, 69 A.3d 635, 637 (Pa.Super. 2013)). "One such exception is consent, voluntarily given." *Commonwealth v. Strickler*, 563 Pa. 47, 56, 757 A.2d 884, 888 (2000). "Whether an individual has voluntarily consented to a search 'is [a question of] fact which must be determined in each case from the totality of the circumstances.'" *Commonwealth v. Rosas*, 875 A.2d 341, 349 (Pa.Super. 2005), *appeal denied*, 587 Pa. 691, 897 A.2d 455 (2006) (quoting *Commonwealth v. Mancini*, 490 A.2d 1377, 1383 (Pa.Super. 1985)).

"The central Fourth Amendment inquiries in consent cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent; and, ultimately, the voluntariness of consent. Where the underlying encounter is found to be lawful, voluntariness becomes the exclusive focus." *Strickler, supra* at 56-57, 757 A.2d at 888-89 (internal citations and footnote omitted).

> [T]he Commonwealth bears the burden of establishing that a consent is the product of an essentially free and unconstrained choice—not the result of duress or coercion, express or implied, or a will overborne—under the totality of the circumstances. As noted, while knowledge of the right to refuse to consent to the search is a factor to be taken into account, the Commonwealth is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent. Additionally, although the inquiry is an objective one, the maturity, sophistication and mental or emotional state of the defendant (including age, intelligence and capacity to exercise free will), are to be

taken into account.

*Id.* at 79, 757 A.2d at 901. "The test for the validity of a consent to search is the same for both the Fourth Amendment and Article I, Section 8, *i.e.*, that the consent is given voluntarily." ***Commonwealth v. Mack***, 568 Pa. 329, 334, 796 A.2d 967, 970 (2002).

Instantly, we must first decide whether Appellant had a reasonable expectation of privacy in the vehicle he was driving at the time of the stop. This Court has held that there is no legally cognizable expectation of privacy where the defendant is the operator of a rental car, but the rental agreement is invalid. ***See Jones, supra*** at 120 (holding that defendant did not have reasonable expectation of privacy where he was not named lessee of vehicle, was not authorized driver, named lessee was not present in vehicle, defendant offered no explanation of his connection to named lessee, and return date for rental car had passed). Here, the testimony established that during the vehicle stop, Appellant provided a rental agreement for a vehicle different than the vehicle he was driving at the time of the stop. Appellant also provided a "receipt" for several other rentals.[6] (***See*** N.T. Preliminary Hearing, 3/30/21, at 21).[7] On this record, we reject Appellant's contention that he had the

_____

[6] Although Trooper Gaetano stated that he later found a "receipt" for the vehicle searched, it is unclear when this occurred. (***See*** N.T. Preliminary Hearing, 3/30/21, at 7, 21). Regardless, Trooper Gaetano confirmed that Appellant did not provide a correct rental agreement for the vehicle at any point. (***See id.***)

[7] We reiterate that the notes of testimony from the preliminary hearing were admitted as evidence at the suppression hearing.

requisite reasonable expectation of privacy in the vehicle to challenge the vehicle search. *See Jones, supra*.

Furthermore, even if Appellant had a reasonable expectation of privacy in the vehicle, he would not be entitled to suppression. The suppression court addressed the propriety of the vehicle stop as follows:

> In the instant case, [Trooper Gaetano] initially observed [Appellant's] vehicle in the left lane in violation of the Vehicle Code. Trooper Gaetano began to follow the vehicle and clocked it at a speed exceeding the posted speed limit. These facts subjected [Appellant] to a lawful traffic stop. Once [Trooper Gaetano] proceeded to [Appellant's] vehicle, he smelled the odor of marijuana emanating from it and he was able to see marijuana shake in plain view. Trooper Gaetano also noticed multiple air fresheners in the vehicle and [Appellant provided] an incorrect rental agreement for the vehicle. When [Trooper Gaetano] was able to articulate these observations, he had a reasonable suspicion that criminal conduct was afoot and the interaction became an investigative detention.

(Suppression Court Opinion, filed 3/16/22, at 6-7).

The record confirms that reasonable suspicion of new criminal activity arose before the initial traffic stop's purpose had been fulfilled, justifying an additional period of detention. *See Wright, supra*. Although the odor of marijuana is insufficient on its own to give rise to reasonable suspicion, the totality of the circumstances supplied reasonable suspicion that criminal activity was afoot. *See Sloan, supra*. Specifically, the trooper observed marijuana shake in plain view, smelled multiple air fresheners, and was provided with a rental agreement for a different vehicle than the one Appellant was driving. Additionally, Appellant supplied a driver's license that was broken

in half, and he changed his story several time during the conversation with the trooper. On this record, we agree with the suppression court's determination that the trooper possessed reasonable suspicion to conduct an investigative detention. **See *Jones, supra***.

Regarding Appellant's consent to search, the suppression court reasoned:

> …Trooper Gaetano requested permission to search the vehicle and [Appellant] consented.
>
> Prior to searching the vehicle, Trooper Gaetano explained that he would need another officer to be present due to Pennsylvania State Police protocol. [Appellant] appeared nervous and can be seen pacing on the MVR. [Appellant] was also complaining that it was cold. [Trooper Gaetano] agreed to stand outside with [Appellant] if that would make him feel better. While waiting for a back-up officer to arrive, [Appellant] began to question why another officer's presence was necessary. Trooper Gaetano explained it was protocol and, at that point, [Appellant] rescinded his consent for the search of his vehicle. [Trooper Gaetano] advised that he would call for a K-9 officer which could take an hour or two, after which [Appellant] consented to the search.
>
> In looking at the totality of these circumstances, [the court notes] that when [Appellant] initially gave consent to search his vehicle, the only officer on the scene was Trooper Gaetano. Even after rescinding consent and again agreeing to the search of his vehicle, Trooper Gaetano was the only officer on scene. [The court finds] that this demonstrates the absence of police excesses at the time consent was given.
>
> There was no physical contact between [Appellant] and [Trooper Gaetano], however, Trooper Gaetano did request that [Appellant] not return to his vehicle. Throughout the interaction, Trooper Gaetano was respectful and the tone of

his voice was courteous. The location of the interdiction was along the highway during daylight hours. In addition, the exchange of questions and statements between [Trooper Gaetano] and [Appellant] was non-confrontational. There was no coerciveness in the questions posed by [Trooper Gaetano]. Nevertheless, the traffic stop flowed seamlessly from a mere encounter into the investigative detention when Trooper Gaetano observed indicia of suspected criminal activity. There was no uncertainty that [Appellant] was not free to leave the scene of the traffic stop.

[Reviewing] the MVR and all the facts, [the court concludes] that [Appellant]'s consent was a result of an essentially free and unconstrained choice. [Appellant] initially gave his consent rather quickly. However, while waiting for back-up officers, he rescinded his consent to search. It was only after [Trooper Gaetano] indicated that he would call for a K-9 officer that [Appellant] again consented to the search. [The court notes] that [Appellant] was able to walk around during the stop and was able to call a female friend during the stop. During his testimony, Trooper Gaetano was suspicious when he was handed a rental agreement for a different vehicle. [Trooper Gaetano] had difficulty in identifying the driver because his license was in two pieces and he was aware of marijuana shake inside of the vehicle. These facts raised suspicion that something more may be going on with [Appellant]. Nevertheless, after review of this testimony and the MVR, [the court finds] that there was nothing to suggest that [Appellant] was coerced into giving his consent to search. Moreover, …a reasonable person in [Appellant]'s position would have believed that he was allowing a general search of the vehicle, including the trunk area which is easily opened. [Appellant] did not place limits on his consent by stating that they could not search the trunk area, even after [Appellant] rescinded his initial consent and then reinstated consent.

(Suppression Court Opinion at 6-9). Accordingly, the suppression court concluded that Appellant had voluntarily given consent to search the vehicle, including the trunk. (*See id.* at 9).

Our review of the record confirms this conclusion. We emphasize that

- 13 -

Appellant does not dispute the footage of the MVR but attempts to recharacterize it. However, the suppression court viewed the MVR and determined it established that Appellant had voluntarily consented to the search during a constitutionally valid citizen/police interaction. *See Strickler, supra*. Although Appellant briefly revoked his consent, he voluntarily gave it again upon learning that he would have to wait some time for a K-9 officer. Similarly, although Appellant implies that he was not informed that he could refuse consent, the Commonwealth is not required to demonstrate knowledge of right to refuse as a prerequisite to establishing consent. *See id.* Absent more, we cannot say that Appellant's consent was anything other than the product of an essentially free and unconstrained choice. *Id.* Thus, even if Appellant had a reasonable expectation of privacy in the vehicle searched, he would not be entitled to suppression of the evidence seized. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/5/2024

- 14 -